# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-0382-DDD-MEH

COMMODITY FUTURES TRADING COMMISSION,

        Plaintiff,

v.

VENTURE CAPITAL INVESTMENTS LTD. and BREONNA S. CLARK, a/k/a Eliot Clark a/k/a Alexander Pak d/b/a Venture Capital Investments and The Life Group,

        Defendants.

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, RESTITUTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS VENTURE CAPITAL INVESTMENTS LTD. and BREONNA S. CLARK

---

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     RELEVANT PROCEDURAL BACKGROUND .................................................................. 3

III.    JURISDICTION AND VENUE .......................................................................................... 4

IV.     PARTIES ............................................................................................................................ 5

V.      UNDISPUTED FACTS ..................................................................................................... 5

        A.  Defendants' Fraudulent Solicitations ...................................................................... 6

        B.  Defendants Misappropriated Pool Participant Funds .............................................. 9

        C.  Defendants Concealed Their Misappropriation ...................................................... 9

        D.  Clark Was a Controlling Person of Venture Capital Investment Ltd. .................. 10

VI.     LEGAL STANDARD FOR DEFAULT JUDGMENT ..................................................... 11

VII.    Violations of 7 U.S.C. § 6$o$(1) (2018) ........................................................................... 13

        A.  Defendants made material misrepresentations, misleading statements, or omissions
        with scienter ................................................................................................................ 15

        B.  Defendant's misrepresentations were made in connection with the purchase or sale of
        a commodity ................................................................................................................. 17

VIII.   Defendants Violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) ....................................... 17

IX.     Registration Violations .................................................................................................... 19

        A.  Failure to Register as a CPO ................................................................................. 20

        B.  Failure to Register as a CTA ................................................................................. 20

X.      Principal-Agent and Controlling Person Liability ........................................................... 21

        A.  Principal-Agent Liability ...................................................................................... 21

        B.  Controlling Person Liability .................................................................................. 22

XI.     RELIEF REQUESTED ..................................................................................................... 24

        A.  The Court Should Order a Permanent Injunction and Trading Prohibition ......... 25

        B.  Restitution ............................................................................................................. 28

        C.  Civil Monetary Penalty ......................................................................................... 30

        D.  Miscellaneous ....................................................................................................... 32

XII.    CONCLUSION ................................................................................................................. 32

TABLE OF AUTHORITIES

*Affiliated Ute Citizens v. Utah v. United States*, 406 U.S. 126 (1972) ......................................... 13

*Atchison, Topeka and Santa Fe Ry. Co. v. Matchmaker, Inc.,* 107 F.R.D. 63 (D. Colo. 1985) ... 12

*Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442 (10th Cir. 1983) ............................................................................................................................... 12

*CFTC ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923 (E.D. Mich. 1985) ................................... 17

*CFTC v. Am. Bd. of Trade*, 803 F.2d 1242 (2d Cir. 1986) ........................................................ 25

*CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168 (D.N.J. 1988)............................................ 26

*CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135 (2d Cir. 1977) .................... 20, 26

*CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92 (2d Cir. 1986) ............................ 29

*CFTC v. Brockbank*, 505 F. Supp. 2d 116 (D. Utah 2006)......................................................... 31

*CFTC v. Clothier*, 788 F. Supp. 490 (D. Kan. 1992)................................................................... 26

*CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573 (9th Cir. 1982).............................. 28, 29

*CFTC v. Commonwealth Fin. Grp., Inc.*, 874 F. Supp. 1345 (S.D. Fla. 1994) .......................... 22

*CFTC v. Driver,* 585 Fed. Appx. 366 (9th Cir. 2014) ................................................................ 16

*CFTC v. Driver*, 877 F. Supp. 2d 968 (C.D. Cal. 2012)............................................................. 16

*CFTC v. Emini Experts, LLC*, 2016 WL 3098199 (M.D. Fla June 3, 2016) ............................... 13

*CFTC v. Emini Experts, LLC*, 2016 WL 7666148 (M.D. Fla. March 29, 2016) ......................... 13

*CFTC v. Eq. Fin. Group LLC*, 572 F.3d 150 (3d Cir. 2009) ....................................................... 14

*CFTC v. Gibraltar Monetary Corp.*, 2006 WL 1789018 (S.D. Fla. May 30, 2006) ................... 22

*CFTC v. GIGFX, LLC,* 844 F.Supp.2d 58 (D.D.C. 2012) ........................................................... 12

*CFTC v. Heritage Capital Advisory Services., Ltd.*, [1982-1984 Transfer binder] Comm. Fut. L. Rep. (CCH) ¶ 21,627 (N.D. Ill. Nov. 8, 1982) ......................................................... 20

*CFTC v. Hunt*, 442 U.S. 921 (1979) ........................................................................... 25

*CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979) ...................................................... 25, 26

*CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317 (S.D. Fla. 2014) ............... 18, 22

*CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2002) ........................................ 28

*CFTC v. Kraft Foods Group, Inc.*, 153 F. Supp. 3d 996 (N.D. Ill. 2015) ..................................... 19

*CFTC v. Leben*, 2016 WL 7354359 (D.S.C. Aug. 5, 2016) ......................................... 19

*CFTC v. Marquis Fin. Mgt. Systems, Inc.*, 2005 WL 3752232 (E.D. Mich. 2005) ...................... 29

*CFTC v. McDonnell*, 332 F.Supp.3d 641 (E.D.N.Y. 2018) .................................................. 18, 19

*CFTC v. Midland Rare Coin Exch.*, 71 F. Supp. 2d 1257 (S.D. Fla. 1999) ................................. 22

*CFTC v. Monex Credit Co.*, 931 F.3d 966 (9th Cir. 2019) ........................................................ 18

*CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978) .................................................................. 25, 26

*CFTC v. My Big Coin Pay*, 334 F. Supp. 3d 492 (D. Mass. 2018) ............................................. 18

*CFTC v. Noble Wealth Data Info. Servs.*, 90 F. Supp. 2d 676 (D. Md. 2000) ........................... 29

*CFTC v. PMC Strategy, LLC*, 903 F. Supp. 2d 368 (W.D.N.C. 2012) ....................................... 31

*CFTC v. R.J. Fitzgerald & Co., 310 F.3d 1321 (11th Cir. 2002)* ........................................ passim

*CFTC v. R.J. Fitzgerald & Co.*, 543 U.S. 1034 (2004) ............................................................. 14

*CFTC v. R2 Capital Group, LLC*, 2017 WL 4350366 (D. Colo. Aug. 3, 2017) .......................... 16

*CFTC v. Rosenberg*, 85 F. Supp. 2d 424 (N.J. March 1, 2000) ................................................. 26

*CFTC v. Schafer*, 1997 WL 33547 409 (S.D. Tex. Dec. 23, 1997) ............................................. 13

*CFTC v. Sidoti*, 178 F.3d 1132 (11th Cir. 1999) .................................................................... 29

*CFTC v. Southern Trust Metals*, 180 F. Supp. 3d at 1124 (S.D. Fla. 2016) ............................... 22

*CFTC v. Trade Exch. Network Ltd.*, 318 F. Supp. 3d 26 (D.D.C. 2018) ...................................... 31

*CFTC v. Trimble*, 11-CV-02887-PAB-KMT, 2013 WL 317576 (D. Colo. Jan. 28, 2013) ......... 17

*CFTC v. Wall Street Underground, Inc.*, 128 Fed. Appx. 726, 2005 WL 958476 (10th Cir. April 27, 2005) .................................................................................................................... 15

*CFTC v. Wall Street Underground, Inc.,* 281 F.Supp.2d 1260 (D. Utah 2003) .......................... 15

*CFTC v. Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304 (S.D. Fla. 2005) ............................. 24

*Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981 (7th Cir. 2000) .......................................... 19

*First Commodity Corp. of Boston v. CFTC*, 676 F.2d 1 (1st Cir.1982) ....................................... 14

*Flora Const. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413 (10th Cir.1962) .............................. 4

*Gililland Energy Corp. v. Union Texas Expl. Corp.,* 948 F.2d 1294 (10th Cir. 1991) .................. 4

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) ............................................................ 11

*Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997) .......................................................... 16

*H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C.Cir.1970) .... 12

*Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873 (7th Cir. 1992) ....................................... 23

*In re First Nat'l Trading Corp.*, 1994 WL 378010 (Jul. 20, 1994) .............................................. 22

*In re Spiegel*, 1988 WL 232212 (January 12, 1988) ................................................................... 23

*Jackson v. Beech*, 636  F.2d 831 (D.C. Cir. 1980) ...................................................................... 12

*JCC, Inc. v. CFTC*, 63 F.3d 1557 (11th Cir. 1995) ............................................................... 24, 31

*Katzson Bros., Inc. v. U.S. E.P.A., 839 F.2d 1396* (10th Cir. 1988) ............................................ 12

*Kelley v. Carr*, 567 F. Supp. 831 (W. D. Mich. 1983) ................................................................. 26

*Kelly v. Carr*, 442 F. Supp. 346 (W.D. Mich. 1977) ................................................................... 26

*Messer v. E.F. Hutton & Co.*, 847 F.2d 673 (11th Cir. 1988) ...................................................... 19

*Miller v. CFTC*, 197 F.3d 1227 (9th Cir. 1999) .......................................................................... 30

*Monieson v. CFTC*, 996 F.2d 852 (7th Cir. 1993) ........................................................ 23

*Olcott v. Delaware Flood Co*., 327 F.3d 1115 (10th Cir. 2003).................................... 12

*Pick v. CFTC*, 99 F.3d 1139 (6th Cir. 1996)................................................................. 22

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)............................................. 26, 29

*Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127 (D. Colo. 2014) ............................ 11

*R&W Technical Services, Ltd. v. CFTC*, 205 F.3d 165 (5th Cir. 2000) ....................... 14

*R&W Technical Services, Ltd. v. CFTC,* 531 U.S. 817 (2000)..................................... 14

*Rosenthal & Co. v. CFTC*, 802 F.2d 963 (7th Cir. 1986)............................................. 21

*SEC v Lines*, No. 07 Civ. 11387, 2011 WL 3611350 (S.D. N.Y. June 7, 2011) .......... 12

*SEC v. Zale Corp.*, 650 F.2d 718 (5th Cir. 1981) ........................................................ 26

*Tripodi v. Welch*, 810 F.3d 761 (10th Cir.  2016)........................................................ 11

*U.S. v. RX Depot, Inc.*, 438 F.3d 1052 (10th Cir. 2006) .............................................. 29

*United States v. Quadro Corp.*, 928 F. Supp. 688 (E.D. Tex. 1996)............................ 26

*Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991)............................................ 16

*Williams v. Smithson*, No. 95-7019, 1995 WL 365988 (10th Cir. June 20, 1995) ....... 11

## STATUTES AND OTHER AUTHORITIES

17 C.F.R. § 1.2 (2019) ................................................................................................... 21

17 C.F.R. § 1.3 (2019) ................................................................................................... 27

17 C.F.R. § 180.1(a)(1)-(3)(2019) ................................................................................ 19

17 C.F.R. § 180.1(a)(2)(2019) ....................................................................................... 19

17 C.F.R. § 180.1(a)(2019) .............................................................................. 17, 18, 19

17 C.F.R. § 180.1(a)(3)(2019) ....................................................................................... 19

17 C.F.R. § 3.1(a) (2019) ................................................................................ 28

17 C.F.R. § 4.14(a)(9) (2019) .......................................................................... 28

17 C.F.R. § 5.1(d)(1) (2019) ...................................................................... 14, 20

17 C.F.R. § 5.3(a)(2)(i) (2019) ........................................................................ 20

17 C.F.R. § 5.3(a)(3)(i)(2019) ......................................................................... 21

17 C.F.R. §§1.1-190.10 (2019) ......................................................................... 5

17 C.F.R. §5.1(e)(1) (2019) ............................................................................. 15

28 U.S.C. § 1331 (2018) .................................................................................... 4

28 U.S.C. § 1345 (2018) .................................................................................... 4

28 U.S.C. § 1920 (2018) .................................................................................. 32

28 U.S.C. § 2413(a)(2) (2018) ........................................................................ 32

7 U.S.C. § 13a-1 (2018) ............................................................... 24, 25, 26, 28

7 U.S.C. § 13a-1(a) (2018) ................................................................................ 4

7 U.S.C. § 13c(b)(2018) ............................................................................ 22, 24

7 U.S.C. § 1a(11) (2018) ................................................................................. 14

7 U.S.C. § 1a(12) (2018) ................................................................................. 14

7 U.S.C. § 2(a)(1)(B) (2018) ........................................................................... 21

7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018) .................................................................. 15

7 U.S.C. § 2(c)(2)(C)(vii) (2018) ...................................................................... 4

7 U.S.C. § 6m(1)(2018) ............................................................................. 20, 21

**7 U.S.C. § 6*o*(1) (2018)** ................................................................................. 13

7 U.S.C. § 6*o*(1)(A) (2018) .................................................................. 13, 16, 24

7 U.S.C. § 6*o*(1)(B) (2018) ................................................................................ 13, 16, 19, 24

**7 U.S.C. § 9(1) (2018)** ........................................................................................ 17, 18, 19

7 U.S.C. § la(40) (2018) .......................................................................................... 27

7 U.S.C. §§ 1-26 (2018) ............................................................................................ 5

7 U.S.C. §1a(18)(A)(xi) (2018) .............................................................................. 3, 9

*Annual Adjustment of Civil Monetary Penalties To Reflect Inflation—2020*, 17 C.F.R. §143.8, 85 FR 1747-02 (January 13, 2020) ......................................................................... 25

Fed. R. Civ. P. 12(a)(1)(A) ........................................................................................ 3

Fed. R. Civ. P. 55(a) ............................................................................................... 11

Fed. R. Civ. P. 55(b) .............................................................................................. 11

Fed. R. Civ. P. 8(b) .................................................................................................. 6

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission")
moves pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and D.C.Colo.LCivR
7.1(d) that a Default Judgment and Order of Permanent Injunction, Civil Monetary Penalties,
Restitution and Other Statutory and Equitable Relief ("Default Judgment Order") be entered
against Venture Capital Investments Ltd. ("VCI") and Breonna S. Clark ("Clark") (collectively
"Defendants ") for their failure to plead or otherwise defend this action. The CFTC seeks entry
of the proposed order submitted herein that includes Findings of Fact, Conclusions of Law, an
Order of Permanent Injunction, Civil Monetary Penalties and Restitution against Defendants.  In
this matter, the CFTC has alleged violations of the Commodity Exchange Act ("Act" or "CEA"),
7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated
thereunder, 17 C.F.R. § 1.1 *et seq*. (2019).

## I.    INTRODUCTION

On February 14, 2020, the CFTC filed a complaint alleging that from at least March 1,
2018 through at least June 30, 2019 ("Relevant Period"), Defendants VCI, by and through Clark
and others, and Clark directly, fraudulently solicited and received at least $534,829 from at least
seventy-two individuals ("pool participants") [ECF #1, CFTC Complaint ¶ 1 (hereinafter
"Complaint ¶ 1")].  Defendants also misappropriated at least $450,302 of pool participants'
funds to pay for personal expenses and to make Ponzi-type payments to other pool participants.
The complaint also alleges that neither VCI nor Clark registered with the CFTC as a Commodity
Pool Operator ("CPO"), nor was Clark registered with the CFTC as a Commodity Trading
Advisor ("CTA").  By and through these actions and other acts described in the CFTC's well-

pleaded complaint, Defendants engaged, are engaging in, and/or are about to engage in acts and practices in violation of certain sections of the Act and CFTC Regulations.

Plaintiff's well-pleaded allegations in its Complaint are sufficient to enter an Order regarding liability. As set forth more fully in the accompanying Memorandum in Support of Plaintiff's Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalties and Equitable Relief Against Defendants Venture Capital Investments Ltd. and Breonna S. Clark ("Memorandum"), the undisputed facts prove: (1) VCI and Clark, in violation of the Act, fraudulently solicited, accepted, and misappropriated funds from individuals to participate in trading off-exchange foreign currency ("forex" or "foreign currency")  Bitcoin, and other virtual or cryptocurrencies ("Altcoins").  Rather than use all of pool participants' funds to trade on behalf of the pool, Defendants traded only a small portion and instead misappropriated at least $450,302  of pool participants' funds to pay for personal expenses and to make Ponzi-type payments to other pool participants; (2) VCI, while acting as a CPO, solicited orders from customers in connection with forex, Bitcoin and Altcoin transactions without registering with the CFTC; (3) Clark was the  principal-agent and controlling person of VCI and acted as a CTA without being registered as such, solicited funds for participation in the pool from prospective and actual participants and/or supervised others; and (4) that final judgment by default should be entered against VCI and Clark as a matter of law.

The Commission's well-pleaded allegations are supported by the Declaration of Kevin Samuel, Futures Trading Investigator, (Exhibit No. 1, hereinafter "Samuel Decl."), which summarizes the evidence supporting the CFTC's allegations that the Defendants committed misappropriation, made fraudulent solicitations and engaged in a scheme to defraud.

## II.     RELEVANT PROCEDURAL BACKGROUND

On February 14, 2020, the Commission filed its complaint alleging that Defendants fraudulently solicited at least $534,829 from at least seventy-two pool participants and misappropriated at least $450,302 of pool participants' funds to pay for personal expenses and to make Ponzi-type payments to other pool participants. [ECF #1]  At no time during the Relevant Period was VCI or Clark registered with the CFTC as a CPO nor was Clark registered as a CTA. The Commission also alleged that most, if not all, of the pool participants were not eligible contract participants ("ECPs") as defined in 7 U.S.C. §1a(18)(A)(xi) (2018).   The Commission's complaint alleged that, by their conduct, Defendants engaged, are engaging in, and/or are about to engage in acts and practices in violation of  7 U.S.C. §§ 6o(1)(A), (B), 6m(1), 9(1) (2018); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019).

On February 18, 2020, VCI and Clark were served personally with the summons, complaint and court orders [ECF ##6, 8 &10] and VCI was also served, on February 27, 2020, at its registered agent's address in Las Vegas, Nevada. [ECF #7].

On March 13, 2020, CFTC filed applications requesting that the Clerk of the Court enter defaults against Defendants for failing to answer or otherwise plead as required by Fed. R. Civ. P. 12(a)(1)(A) [ECF ##11-12].[1]  VCI was a Colorado Limited Liability company with its principal place of business in Colorado and not an infant, incompetent person, or currently in military service.  [ECF ## 22, 22-1].  Clark is an individual who is not an infant, incompetent person or currently in military service. [ECF # 11, Samuel Decl. ¶ 7]. The Clerk of the Court

---

[1]      In its March 18, 2020 "Notice of Plaintiff's Compliance with the Court's February 14, 2020 Order," supported by affidavits, the CFTC noted its continued attempts to prompt Defendants to comply with the Court's orders. (ECF #15).

entered defaults against Clark on March 17, 2020 [ECF # 13] and VCI on March 23, 2020 [ECF # 23].[2]  On April 23, 2020, the Court issued a Minute Order directing that the CFTC may file a motion for default judgment no later than May 22, 2020. [ECF #26].

## III.   JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, 7 U.S.C. § 13a-1(a) (2018), authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  7 U.S.C. § 2(c)(2)(C)(vii) (2018), provides the CFTC with jurisdiction over the forex solicitations and transactions at issue in this action.

Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2018) because Defendants reside in this District, transacted business in this District, and certain acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District, among other places.

---

[2]      VCI is also in default because an attorney has not entered an appearance on behalf of VCI. (ECF # 22).  "The law is well settled that a corporation may not proceed in court *pro se*." *Gililland Energy Corp. v. Union Texas Expl. Corp.,* 948 F.2d 1294 (10th Cir. 1991).  *See also, Flora Const. Co. v. Fireman's Fund Ins. Co*., 307 F.2d 413, 414 (10th Cir.1962) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law.").

## IV.    PARTIES

Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2018), and the Regulations promulgated thereunder, 17 C.F.R. §§1.1-190.10 (2019).  The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street N.W., Washington, DC  20581. [Complaint ¶ 10].

Defendant **Venture Capital Investments Ltd.** was a business organized under the laws of Colorado and registered as a limited liability company as of April 3, 2018 with its principal place of business in Denver, Colorado.  Clark was VCI's principal and manager.  VCI was dissolved on October 17, 2018.  VCI has never been registered with the Commission in any capacity. [Complaint ¶ 11].

Defendant **Breonna S. Clark**, a/k/a Eliot Clark, a/k/a/ Alexander Pak, d/b/a Venture Capital Investments and The Life Group, currently resides in the Denver, Colorado area.  From at least March 1, 2018 to April 2, 2018, Clark solely controlled, operated and did business as Venture Capital Investments.  Subsequently, on April 3, 2018, Clark organized VCI as a limited liability company under the laws of Colorado.  On October 17, 2018, Clark dissolved VCI.  After VCI's dissolution, Clark operated and continued to do business as The Life Group.  Clark has never been registered with the Commission in any capacity. [Complaint ¶ 12].

## V.    UNDISPUTED FACTS

The CFTC incorporates by reference the well-pled facts in the CFTC's complaint [Complaint ¶¶ 18-43].  As noted, Defendants have failed to file any responsive pleadings; and,

therefore, the facts alleged in the complaint should be taken as true for purposes of the Court's consideration of the Motion for Default Judgment against Defendants.  *See* Fed. R. Civ. P. 8(b).

A.    **Defendants' Fraudulent Solicitations**

During the Relevant Period, Defendants' fraudulently solicited at least seventy-two pool participants to trade forex, Bitcoin or Altcoins in a commodity pool operated at various points by Clark or VCI. [Complaint ¶ 24; Samuel Decl. ¶ 8].  These solicitations occurred through social media (*e.g*., Facebook and Twitter), electronic mail, webinars, instant messaging and face-to-face meetings touted as "financial seminars" that were held in churches or in the home of one of the pool participants. [ECF #1, ¶¶ 24-25; Samuel Decl. ¶ 6].

 As a result of these solicitations, pool participants sent Defendants over $534,829 [Complaint ¶ 24; Samuel Decl. ¶ 9].  Rather than trade all pool participant funds [Complaint ¶ 24; Samuel Decl. ¶¶ 11-29], Defendants misappropriated at least $450,302 which were used for Ponzi-type payments and personal expenses.[Complaint ¶¶ 24, 37; Samuel Decl. ¶ 33-36].

In order to conceal their misappropriation, Defendants issued false statements, lied to pool participants about the availability of their funds and masked their misappropriation by making Ponzi-type payments.  [Complaint ¶¶ 25-30].  During the course of the solicitations Defendants told prospective pool participants that Defendants had trading experience and expertise, had an excellent track record, and promised future profitability trading forex and virtual currencies. [Complaint ¶¶ 1, 25, 31-33].

For example, Defendants falsely stated in:

a.      an October 1, 2018 electronic mail sent to prospective pool participants, that they had a "master team of traders [able to] execute the Foreign Exchange markets with precision and accuracy."

b.      an April 12, 2018 Facebook posting, "[t]he average IRA and 401k yield a 12-19% return a year.  With Investing in Venture you could yield 12-16% per month."

c.      a May 26, 2018 Facebook posting, "[o]ur Forex Fiat trading has secure (sic) 21% this month".

d.      a June 28, 2018 VCI's Facebook page posting that: "We have closed the month of June with a 19% return to our clients!!!"

e.      an April 16, 2018 VCI Twitter account posting, "[w]e specialize in trading your capital like the Banks and Large Institutions that only pay you a return .1% - 1.5% on average in your savings account. We return our clients on average 12-21% monthly."

f.       an April 16, 2018 instant message to a prospective pool participant, that "[t]his is a Forex Fund investment that pays a 12-21% monthly ROI. We also have crypto investments which return 18% weekly."

g.      an April 14, 2018 VCI Twitter posting, that they have "revolutionized the art of Forex trading" and specialized in "innovative calculated trading and risk management to give our clients the largest return on their capital."  [Complaint ¶¶ 25-26].

In fact, Defendants did not possess trading experience and expertise, have an excellent track record, and their promises of future profitability were fraudulent. [Complaint ¶ 27]. Defendants' statements that they had trading experience and expertise is contradicted by the fact that Clark, as CTA for the VCI pool:  1) had very little trading experience; and 2) lost what little

money Clark traded on behalf of the pool participants. [Complaint ¶¶ 28; Samuel Decl. ¶¶ 40-41]. In addition one of the "master traders" touted by Clark as "highly skilled and trained" was a truck driver who provided administrative assistance to VCI. [Complaint ¶ 29].

Further, Clark did not have an excellent track record trading. In fact, Clark's claims of, among other things: 1) 12-16% monthly returns; 2) that VCI's Forex Fiat trading secured 21% monthly; and 3) that VCI returned on average 12-21% monthly are simply false. [Complaint ¶ 30; Samuel Decl. ¶¶ 38-39]. What little trading Clark engaged in was unprofitable and Defendants misappropriated the bulk of pool participant funds. [Complaint ¶ 30; Samuel Decl. ¶ 40-41]. Defendants' claims of future profitability are also false. [Complaint ¶ 31].

Defendants also made misrepresentations regarding the risk of loss involved with trading forex, Bitcoin and Altcoins. For example, Defendants represented:

a. in an April 17, 2018 electronic mail, a PowerPoint Presentation to prospective pool participants promising that pool participants received a "capital lock" which protected pool participants' principal capital from any risk of loss.

b. in an October 1, 2018 circular to prospective pool participants, that they had implemented "stringent trading plans . . . to safeguard all investor capital to ensure minimal loss." [Complaint ¶ 32].

Defendants' statements were false because Defendants did not have a "capital lock" nor did they have "stringent trading plans. . . to safeguard all investor capital to ensure minimal loss." Rather than safeguard pool participant funds, Defendants misappropriated the bulk of their funds. [Complaint ¶ 33; Samuel Decl. ¶¶ 46-49].

In soliciting pool participants, Defendants made no attempt to determine if they were ECPs under 7 U.S.C. §1a(18)(A)(xi) (2018).  In fact, most, if not all, of Defendants' pool participants were not ECPs. [Complaint ¶ 34; Samuel Decl. ¶ 42].

B.      **Defendants Misappropriated Pool Participant Funds**

During the Relevant Period, Defendants instructed pool participants to send their funds directly to VCI's bank accounts at J.P. Morgan Chase Bank N.A. and US Bank N.A.  Defendants also instructed pool participants to send funds through service providers such as PayPal, Zelle, Venmo, Cash App and a Bitcoin wallet. [Complaint ¶ 35; Samuel Decl. ¶¶ 8, 30-32].

During the Relevant Period, Defendants received at least $534,829 in pool participant funds.[Complaint ¶ 36; Samuel Decl. ¶¶ 9, 36, 43].  Of this amount, Defendants transferred approximately $121,165 to various cryptocurrency and forex trading accounts in the name of Breonna Clark at cryptocurrency and forex exchanges. [Complaint ¶ 36; Samuel Decl. ¶ 36].  Of this amount, approximately $37,282 was returned from cryptocurrency and forex trading accounts to VCI and/or Clark bank accounts. [Complaint ¶ 36; Samuel Decl. ¶ 28].  The remaining approximately $83,883 was lost trading. [Complaint ¶ 36; Samuel Decl. ¶¶ 28, 36]. Defendants spent $644 for business expenses. [Complaint ¶ 36; Samuel Decl. ¶¶ 35-36].

Defendants used the remaining pool participants' funds, at least $450,302, to pay for Clark's personal expenses, including the purchase or lease of a BMW 5 series automobile, the purchase of jewelry, gas, groceries, cash withdrawals totaling over $93,000, and to make Ponzi-type payments to pool participants to create the illusion of profitability. [Complaint ¶ 37; Samuel Decl. ¶¶  33-34].

C.      **Defendants Concealed Their Misappropriation**

To conceal their misappropriation, Defendants sent pool participants account statements which purported to show trading gains. The account statements were a sham. For example, one pool participant received a November 1, 2018 statement showing more than a 67% return over a 14 week period. [Complaint ¶ 38; Samuel Decl.¶¶ 37, 40]. Another pool participant received a May 25, 2018 account statement showing a 26% return for the month. [Complaint ¶ 38; Samuel Decl. ¶ 41]. These statements were false as little of the pool participants' funds were used to trade and what trading was done was unprofitable. [Complaint ¶ 38; Samuel Decl. ¶ 47].

Defendants concealed their misappropriation by making Ponzi-type payments to pool participants. [Complaint ¶ 39; Samuel Decl. ¶ 44]. These payments purportedly represented profits that Defendants made on behalf of pool participants. [Complaint ¶ 39; Samuel Decl. ¶¶ 33, 44 ].

At other times during the Relevant Period, pool participants sought to withdraw their funds. In several of these instances, Clark ceased communicating with these pool participants and blocked these pool participants on social media, including VCI's Facebook page. [Complaint ¶ 40].

Clark also told pool participants that a "CFTC audit" was a reason he could not return pool participants' funds. In fact, Clark's statement that Defendants were subject to a CFTC "audit" was false. [Complaint ¶ 41]. No such CFTC "audit" ever occurred. [Complaint ¶ 41; Samuel Decl. ¶ 50]. Defendants never returned funds to most of those pool participants who requested their money back. [Complaint ¶ 41].

D.   **Clark Was a Controlling Person of Venture Capital Investment Ltd.**

10

At all times, Clark was a controlling person of VCI.  Clark founded and organized VCI, acted as its principal and manager, and was in charge of marketing and pool participant relations. [Complaint ¶¶ 18-21, 42].  Clark either directly or indirectly controlled content for the VCI Facebook page and Twitter account, opened bank accounts and was the signatory on such bank accounts and controlled the Bitcoin wallet address to which pool participants were directed to deposit Bitcoin.  [Complaint ¶¶ 18-23, 42].  Clark was in charge of hiring employees and contractors for VCI.  [Complaint ¶ 42; Samuel Decl. ¶ 31].  Clark acted in bad faith or knowingly induced VCI's fraudulent acts. [Complaint ¶ 42].

## VI.    LEGAL STANDARD FOR DEFAULT JUDGMENT

The Federal Rules of Civil Procedure define the two-step process to obtain the default judgment sought here against VCI and Clark.  Fed. R. Civ. P. 55(a).  After a party's default has been entered, the party who sought the default may file a motion requesting a default judgment. Fed. R. Civ. P. 55(b); [ECF #26].  See also, *Williams v. Smithson*, No. 95-7019, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished) See Exhibit 2, *Notice of Cited Unpublished Opinions*. The decision to grant a motion for default judgment is within the sound discretion of the district court. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

Once the Court determines that a defendant is in default, the factual allegations of a complaint relating to liability are taken as admitted or true. *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014); *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir.  2016) (A defaulting defendant admits the plaintiff's well-pleaded allegations of fact, and is precluded from challenging those facts.)

11

Damages also may be awarded if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts. *Olcott v. Delaware Flood Co*., 327 F.3d 1115, 1125 (10th Cir. 2003); *See also*, *SEC v Lines*, No. 07 Civ. 11387(DLC)(DF), 2011 WL 3611350, at *4 (S.D. N.Y. June 7, 2011) (decision of whether a hearing is necessary regarding the matter of damages is left to the discretion of the district court).

The Tenth Circuit  noted that modern courts do not favor default judgments and strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays. *Katzson Bros., Inc. v. U.S. E.P.A., 839 F.2d 1396, 1399* (10th Cir. 1988)(*quoting  Jackson v. Beech*, 636  F.2d 831, 835 (D.C. Cir. 1980); *see also Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1443 (10th Cir. 1983) ("a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.")  Accordingly, default judgment is available "only when the adversary process has been halted because of an essentially unresponsive party ... [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson,* 636 F.2d at 836 (*quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)). *Atchison, Topeka and Santa Fe Ry. Co. v. Matchmaker, Inc.,* 107 F.R.D. 63, 65 (D. Colo. 1985)(default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party)  When a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics, a court has the power to enter default judgment. *CFTC v. GIGFX, LLC,* 844 F.Supp.2d 58, 62 (D.D.C. 2012).

12

Defendants have not responded to the Complaint, nor have they attempted to dispute or defend against the allegations in the Complaint. In light of the facts established above, the Commission respectfully submits that the entry of final judgment against Defendants is warranted as a matter of law.

## VII.    Violations of 7 U.S.C. § 6*o*(1) (2018)

7 U.S.C. § 6*o*(1)(A) and (B) (2018), in relevant part, makes it unlawful for CPOs and CTAs, whether registered with the Commission or not, by use of the mails or any other means of interstate commerce, directly or indirectly, to:  (A) employ and device, scheme or artifice to defraud any client or pool participant, or (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or pool participant.

To prove a cause of action under 7 U.S.C. § 6*o* (1)(B), the CFTC must prove by a preponderance of the evidence that VCI and/or Clark (a) acting as a CPO or CTA; (b) made material misrepresentations, misleading statements, or omissions; (c) with scienter; (d) in connection with the purchase or sale of a commodity. *CFTC v. Emini Experts, LLC*, 2016 WL 7666148 at *4 (M.D. Fla. March 29, 2016), *adopted*, 2016 WL 3098199 (M.D. Fla June 3, 2016).  *See also CFTC v. Schafer*, 1997 WL 33547 409 at *5, *8 (S.D. Tex. Dec. 23, 1997) (noting that elements under 7 U.S.C. § 6*o* are identical to those under 7 U.S.C. § 6b(a)(ii) and track the elements of a common law action for fraud).[3]  *CFTC v. Eq. Fin. Group LLC*, 572 F.3d

---

[3]    However, "[u]nlike a cause of action for fraud under the common law of Torts, 'reliance' on the representations is not a requisite element in an enforcement action." *R.J. Fitzgerald & C*o., 310 F.3d at 1328.  See also *Affiliated Ute Citizens v. Utah v. United States*, 406 U.S. 126, 153, (1972).

150, 159–60 (3d Cir. 2009) (Scienter may be satisfied, either by conscious behavior or recklessness, when a defendant deceives, manipulates, or defrauds). *First Commodity Corp. of Boston v. CFTC*, 676 F.2d 1, 6–7 (1st Cir.1982) (a reckless misrepresentation suffices when "one … departs so far from the standards of ordinary care that it is very difficult to believe the speaker was not aware of what he was doing").

In interpreting and applying the CEA, courts "are guided by the principle that the CEA is a remedial statute that serves the crucial purpose of protecting the innocent individual investor - who may know little about the intricacies and complexities of the commodities market - from being misled or deceived." *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1329 (11th Cir. 2002), *cert. denied*, 543 U.S. 1034 (2004), *See also R&W Technical Services, Ltd. v. CFTC*, 205 F.3d 165, 173 (5th Cir. 2000) *cert. denied*, 531 U.S. 817 (2000), (noting Congress gave the CFTC broad enforcement powers "in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising").

Defendants satisfy the first element of being a CPO or CTA.[4]  During the period from at least March 1, 2018 to April 2, 2018 and October 17, 2018 to June 30, 2019, Clark acted as a

---

[4]      7 U.S.C. § 1a(11) (2018) defines a CPO as any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities or property, either directly or through capital contributions, the sale of stock or other forms or securities or otherwise, for the purpose of trading in commodity interests.  17 C.F.R. § 5.1(d)(1) (2019) defines a CPO for purposes of 17 C.F.R. part 5, as "any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP as defined in section 1a(18) of the Act, and that engages in retail forex transactions."

7 U.S.C. § 1a(12) (2018), in part, defines a CTA as any person who for compensation or profit, engages in the business of advising others, either directly or through publications, writings or electronic media, as to the value or advisability of trading forex as well as any person who for compensation and profit, and as part of a regular business, issues or promulgates analyses or

CPO for the VCI pool.  Further, from April 3, 2018 to October 17, 2018, VCI acted as a CPO for the VCI pool.[5]  [Complaint ¶¶ 18-21].

During these time frames, Clark and VCI acted as CPOs because they solicited and accepted funds for a pooled investment vehicle from non-ECPs for the purpose of engaging in trading commodity interests, specifically, retail forex.  Clark acted as a CTA because for compensation or profit, Clark advised pool participants on trading retail forex.  In addition, Clark acted as a CTA because Clark exercised discretionary trading authority or obtained written authorization to exercise discretionary trading authority over pool accounts for or on behalf of persons who were not ECPs in connection with retail forex transactions.

###### A.  Defendants made material misrepresentations, misleading statements, or omissions with scienter

Whether a misrepresentation has been made depends on the "overall message" and the "common understanding of the information conveyed" to the objectively reasonable customer or client. *R.J. Fitzgerald & Co.*, 310 F.3d at 1328-29 (citation omitted).[6]  Statements of fact which are facially false, "statements of opinion or belief must rest on 'a factual basis that justifies them

---

reports concerning the value of or the advisability of, among other things, trading forex.  Under 17 C.F.R. §5.1(e)(1) (2019), a CTA for purposes of 17 C.F.R. part 5 means, in relevant part, any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an ECP in connection with retail forex transactions.

[5]      Defendants must comply with 7 U.S.C. § 6o(1) regardless of whether Defendants were actually registered, required to be registered, or exempted from registering. *CFTC v. Wall Street Underground, Inc.,* 281 F.Supp.2d 1260, 1269 (D. Utah 2003), *aff'd,* 128 Fed. Appx. 726, 2005 WL 958476 (10th Cir. April 27, 2005).

[6]      7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018) provides in relevant part, that an account or pooled investment vehicle that is offered for the purpose of trading, or that trades, any agreement, contract, or transaction in foreign currency described in clause 2(c)(2)(C)(i) shall be subject to 7 U.S.C. § 6o.

as accurate."' *Grossman v. Novell, Inc*., 120 F.3d 1112, 1123 (10th Cir. 1997) (*quoting Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1093 (1991).  Relatedly, a statement also is considered false or misleading where the speaker omits "important factual caveats."  *CFTC v. R2 Capital Group, LLC*, 2017 WL 4350366 at *8 (D. Colo. Aug. 3, 2017), *appeal dismissed*, 2017 WL 8751969 (10th Cir. Nov. 14, 2017).

VCI and Clark directly violated 7 U.S.C. § 6*o*(1)(A)-(B) while acting as CPOs because they, among other things, intentionally or recklessly:  (1) misappropriated pool participant funds; (ii) made material misrepresentations about Defendants' trading expertise, track record, profitability, and minimized the risk of loss; and (3) created and distributed to pool participants fabricated account statements.  Clark directly violated 7 U.S.C. § 6*o*(1)(A)-(B) while acting as a CTA, because among other things, intentionally or recklessly, Clark:  (1) misappropriated pool participant funds; (ii) made material misrepresentations about Defendants' trading expertise, track record, profitability, and minimized the risk of loss; and (3) created and distributed to pool participants fabricated account statements.

Misappropriation or diversion of funds entrusted to one for trading purposes is "willful and blatant fraudulent activity" that clearly violates the Act. *CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012), *aff'd sub nom*. *CFTC v. Driver,* 585 Fed. Appx. 366 (9th Cir. 2014)(unpublished)("[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation." (citation omitted). See, *Ex. 2, Cited Unpublished Opinions*.  *U.S. Commodity Futures Trading Commn. v. Trimble,* 11-CV-02887-PAB-KMT, 2013 WL 317576, at *6 (D. Colo. Jan. 28, 2013) (Misappropriation of customer funds is willful and blatant fraudulent activity); *CFTC ex rel.*

16

*Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (misappropriation of customers' funds is a violation of 4o(1)).

      **B.**    **Defendant's misrepresentations were made in connection with the purchase or sale of a commodity**

As described in the Complaint, Defendants solicited, accepted and received funds for the purpose of trading commodity interests, that is, forex and Bitcoin. [Samuel Decl. ¶ 8].

      **VIII.**    **Defendants Violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)**

7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to:

> use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

17 C.F.R. § 180.1(a) provides:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
>
>     (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
>     (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
>     (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

The Commission has authority under 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) to take action against persons who engage in fraud and fraudulent schemes in connection with contracts of sale of commodities in interstate commerce, which includes virtual currencies.  See, *e.g.*,

*CFTC v. My Big Coin Pay*, 334 F. Supp. 3d 492, 495–99 (D. Mass. 2018) (in denying motion to dismiss, court holds that 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)  apply to fraud in connection with contracts of sale of commodities in interstate commerce and that virtual currencies are commodities); *CFTC v. McDonnell*, 332 F.Supp.3d 641, 717, 723 (E.D.N.Y. 2018) (holding 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)  were violated by fraudulent misrepresentations in connection with virtual currency transactions, commodities in interstate commerce); see also *CFTC v. Monex Credit Co.*, 931 F.3d 966, 977 (9th Cir. 2019) (holding 7 U.S.C. § 9(1) applies to "stand alone fraud claims in the sale of leveraged commodities").

As relevant to Defendants in this case, a person violates 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) if he or she:  (1) engages in prohibited conduct (i.e., misappropriates pool participant funds, employs a fraudulent scheme, makes material misrepresentations or omissions, or engages in fraudulent business practices); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter.  *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014).

First, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by intentionally or recklessly using a "manipulative or deceptive device or contrivance" "in connection with . . . [the] contract of sale of [a] commodity in interstate commerce," namely Bitcoins.  More specifically, Defendants violated Section 6(c)(1) and Regulation 180.1(a)(1) by misappropriating customer funds.  This type of misappropriation falls squarely within the Act and Regulations and has been recognized as a violation subject to an enforcement action.  *See CFTC v. McDonnell*, 332 F.Supp.3d 641, 717-19, 723 (E.D.N.Y. 2018) (finding defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)  by misappropriating funds and making misrepresentations); *CFTC v.*

18

*Leben*, No. 3:14-cv-866, 2016 WL 7354359, at *5 (D.S.C. Aug. 5, 2016) (finding that the defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by misappropriating funds).

Second, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(2) by making multiple misrepresentations to its customers which were untrue or misleading statements of a material fact including representing that Defendants would purchase, among other things, Bitcoins and sending pool participants falsified account statements, in which Defendants misrepresented that Bitcoins been purchased for these pool participants.  [Complaint ¶ 60]. The same material misrepresentations made with scienter regarding Defendants' violation of 7 U.S.C. § 6*o*(1) also apply to Defendants' violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

Third, Defendants also violated 17 C.F.R. § 180.1(a)(3) as their conduct "operate[d] or would operate as a fraud or deceit upon any person."  The language of 17 C.F.R. § 180.1(a)(3) tracks that of 7 U.S.C. § 6*o*(1)(B), which only requires a finding of recklessness as a prerequisite for establishing liability.  *See, e.g., Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000); *Messer v. E.F. Hutton & Co*., 847 F.2d 673, 678-79 (11th Cir. 1988).  *CFTC v. Kraft Foods Group, Inc*., 153 F. Supp. 3d 996, 1015 (N.D. Ill. 2015) (17 C.F.R. § 180.1 requires that Defendant's scienter must be shown to be either reckless or intentional; and this standard can be met by allegations of conduct showing an extreme departure from the standards of ordinary care.).

## IX.    Registration Violations

The courts have consistently recognized that the operation of an unregistered entity is a serious violation of the Act and a threat to the integrity of the industry. Thus, failure to register

with the Commission is a serious offense, and not a mere technical violation of the Act. See

*CFTC v. British American Commodity Options Corp*., 560 F.2d 135, 139-140 (2d Cir. 1977); *see*

*also CFTC v. Heritage Capital Advisory Services., Ltd*., [1982-1984 Transfer binder] Comm.

Fut. L. Rep. (CCH) ¶ 21,627 at 26,387 (N.D. Ill. Nov. 8, 1982).

### A.      Failure to Register as a CPO

 7 U.S.C. § 6m(1)(2018), makes it unlawful for any CPO to make use of the mails or any

means or instrumentality of interstate commerce in connection with its business unless it is

registered with the CFTC.   Similarly, 17 C.F.R. § 5.3(a)(2)(i) (2019) makes it unlawful for any

CPO engaged in retail forex transactions defined in 17 C.F.R. § 5.1(d)(1) (2019), to act as a CPO

without being so registered. 17 C.F.R. § 5.1(d)(1) defines a CPO as "any person who operates or

solicits funds, securities, or property for a pooled investment vehicle that is not an ECP as

defined in section 1a(18) of the Act, and that engages in retail forex transactions."

During the period from at least March 1, 2018 to April 2, 2018 and October 17, 2018 to

June 30, 2019, Clark acted as a CPO.  [Complaint ¶ 18-20].  Further, from April 3, 2018 to

October 17, 2018, VCI acted as a CPO. [Complaint ¶ 20].  During these time frames Clark and

VCI solicited and accepted funds for a pooled investment vehicle from non-ECPs for the purpose

of engaging in commodity interest transactions, namely retail forex. [Complaint ¶ 46]. VCI and

Clark violated 7 U.S.C. § 6m(1)(2018) and 17 C.F.R. § 5.3(a)(2)(i)(2019) by engaging in these

activities without having registered as CPOs.

### B.      Failure to Register as a CTA

7 U.S.C. § 6m(1)(2018), makes it unlawful for any CTA to make use of the mails or any

means or instrumentality of interstate commerce in connection with its business unless it is

registered with the CFTC.  Similarly, 17 C.F.R. § 5.3(a)(3)(i)(2019) makes it unlawful for any

CTA engaged in retail forex transactions to act as a CTA without being registered.

During the Relevant Period, as set forth above, Clark acted as a CTA because for

compensation or profit, Clark advised pool participants who were not ECPs on trading retail

forex.  In addition, Clark acted as a CTA because Clark exercised discretionary trading authority

or obtained written authorization to exercise discretionary trading authority over pool accounts

for or on behalf of persons who were not ECPs in connection with commodity interests,

specifically, retail forex transactions. [Complaint ¶ 49].

As set forth above, Clark used the mails or other means or instrumentalities of interstate

commerce in connection with the VCI pool's business. [Complaint ¶ 76].  Accordingly, Clark

violated 7 U.S.C. § 6m(1)(2018) and 17 C.F.R. § 5.3(a)(3)(i)(2019) by engaging in these

activities without having registered as a CTA.

## X.      Principal-Agent and Controlling Person Liability

### A.      Principal-Agent Liability

Under 7 U.S.C. § 2(a)(1)(B) (2018) and  17 C.F.R. § 1.2 (2019), a principal is strictly

liable for the violations of its officials, agents, or other persons acting for it within the scope of

their employment or office.  *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[W]e

have no doubt that section 2(a)(1) imposes strict liability on the principal . . . provided, of course,

as the statute also states expressly, that the agent's misconduct was within the scope or

(equivalently but more precisely) in furtherance of the agency.").  During the Relevant Period,

described above in Part V, D, Clark committed his violative acts within his capacity as a

principal and agent of VCI.  Thus, VCI is liable for Clark's violations of the Act and

Regulations.

**B.    Controlling Person Liability**

At the same time, from April 3, 2018 through October 17, 2018, Clark was the principal and manager of VCI and at all times controlled VCI.  To establish controlling person liability under 7 U.S.C. § 13c(b), the CFTC must show both:  (1) control and (2) lack of good faith or knowing inducement of the acts constituting the violation.  *See* 7 U.S.C. § 13c(b); *see also In re First Nat'l Trading Corp.*, CFTC No. 90-28, 1994 WL 378010, at *11 (Jul. 20, 1994), *aff'd without opinion sub nom. Pick v. CFTC*, 99 F.3d 1139 (6th Cir. 1996).  To establish the first element, control, a defendant must possess general control over the operation of the entity principally liable.  *See, e.g., R.J. Fitzgerald*, 310 F.3d at 1334 (recognizing an individual who "exercised the ultimate choice-making power within the firm regarding its business decisions" as a controlling person).  General control exists where the defendant is "an officer, founder, principal, or the authorized signatory on the company's bank accounts." *CFTC v. Southern Trust Metals*, 180 F. Supp. 3d at 1124, at 1131 (S.D. Fla. 2016).  Other indicia of general control include: entering into contracts, *Hunter Wise*, 21 F. Supp. 3d at 1322-24; being "regularly present" in the office, *CFTC v. Midland Rare Coin Exch.*, 71 F. Supp. 2d 1257, 1265-66 (S.D. Fla. 1999); meeting with employees, *CFTC v. Commonwealth Fin. Grp., Inc.*, 874 F. Supp. 1345, 1357 (S.D. Fla. 1994); and the hiring of personnel, *CFTC v. Gibraltar Monetary Corp.*, No. 04-80132-CIV, 2006 WL 1789018, at *18-19 (S.D. Fla. May 30, 2006), *aff'd*, 575 F.3d 1180 (11th Cir. 2009).  Evidence that a defendant is the sole principal or the authorized signatory on the company's bank accounts indicates the power to control a company. *See In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *8 (January 12, 1988).

The CFTC must also show that a Defendant possessed specific control, which is "the power or ability to control the specific transaction or activity upon which the primary violation was predicated."  *Monieson v. CFTC*, 996 F.2d 852, 859 (7th Cir. 1993) (internal quotation marks and citation omitted).  The Defendant does not need to participate in or benefit from the wrongdoing; the issue is whether the Defendant has the power to address the illegal conduct.  *Id.*

In addition to control, the CFTC must show the controlling person knowingly induced, directly or indirectly, the acts constituting the violation, or did not act in good faith.  To show knowing inducement, the CFTC must show that a Defendant had actual or constructive knowledge of the core activities that constituted the violation of the Act or the Regulations, and allowed the activities to continue.  *R.J. Fitzgerald*, 310 F.3d at 1334; *Spiegel*, 1988 WL 232212, at *7.  To show lack of good faith, the CFTC must show that a Defendant failed to maintain a "reasonably adequate system of internal supervision and control" or did not oversee the system "with any reasonable diligence."  *Monieson*, 996 F.2d at 860 (quoting *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992)).

As to Clark's general and specific control, he is the principal and manager of VCI and directed every aspect of the fraudulent scheme.  Clark directly made or directed others to make omissions and misrepresentations to participants and misappropriated participants' funds.  Thus, Clark had general control over VCI and specific control over the misconduct upon which the primary violations are predicated.  *See Spiegel*, 1988 WL 232212, at *7 ("[W]e reject the view that a controlling person must know that the acts at issue amount to a violation in order to be held to have 'knowingly' induced the acts constituting the violation. . . .  [I]f the controlling

23

person knowingly induces acts that amount to a violation, he will not escape liability merely because he acted in good faith.").

In addition, Clark knowingly induced the violations because he individually had knowledge of the wrongdoing.  [Complaint ¶ 42; Samuel Decl. ¶¶ 30-31].  Clark either did not act in good faith or knowingly induced VCI's violations and is therefore liable, pursuant to 7 U.S.C. § 13c(b)(2018), for VCI's violations of 7 U.S.C. § 6*o*(1)(A) and/or (B)(2018).  *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995); *CFTC v. Wilshire Inv. Mgmt. Corp*., 407 F. Supp. 2d 1304, 1312 (S.D. Fla. 2005), *aff'd in part*; vacated and remanded in part, 531 F.3d 1339 (11th Cir. 2008) (Knowing inducement requires a showing that the controlling person had actual or constructive knowledge of the core activities that constitute the violations at issue and allowed them to continue.).  Therefore, pursuant to 7 U.S.C. § 13c(b) (2018), Clark is liable for VCI's violations of 7 U.S.C. §§ 6*o*(1)(A), (B), 6m(1), 9(1) (2018); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019).

## XI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by 7 U.S.C. § 13a-1 (2018), and pursuant to the Court's inherent equitable powers, enter an Order that: (a) permanently enjoins Defendants from committing further violations of the Act and Regulations as charged and from engaging in any commodity-trading-related activity; (b) requires that VCI and Clark make restitution to the customers and investors they defrauded; and (c) imposes a civil monetary penalty ("CMP") against Defendants VCI and Clark. 7 U.S.C.

§ 13a-1.[7]

## A.  The Court Should Order a Permanent Injunction and Trading Prohibition

7 U.S.C. § 13a-1, authorizes the Commission to seek permanent injunctive relief and

CMPs, stating in relevant part:

> (a)  Whenever it shall appear to the Commission that any registered entity or other person has engaged in, is engaging in, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order, thereunder . . . the Commission may bring an action in the proper district court of the United States . . . to enjoin such action or practice, or to enforce compliance with this Act, or any rule, regulation or order thereunder…

The Commission must show only two things to obtain permanent injunctive relief in an

action under 7 U.S.C. § 13a-1: (1) that a violation of the Act has occurred; and (2) that there is a

reasonable likelihood of future violations. *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978).

The Commission makes the requisite showing for issuance of injunctive relief when it presents a

*prima facie* case that the defendant has engaged, or is engaging, in illegal conduct, and that there

is a likelihood of future violations. *CFTC v. Am. Bd. of Trade*, 803 F.2d 1242, 1250-51 (2d Cir.

1986); *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979), *cert. denied*, 442 U.S. 921 (1979).

Once the Commission demonstrates that the defendant violated the Act, then the

Commission only needs to show that there is some reasonable likelihood of future violations to

obtain injunctive relief.  To be sure, while past misconduct does not require the conclusion that

there is a likelihood of future misconduct, it is "highly suggestive of the likelihood of future

---

[7]      The $130,000 per violation amount has been inflation adjusted to $182,031. *Annual Adjustment of Civil Monetary Penalties To Reflect Inflation—2020*, 17 C.F.R. §  143.8, 85 FR 1747-02 (January 13, 2020).

violations." *Id.* at 1220; see also *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 191 (D.N.J. 1988); *cf. SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981), *cert. denied*, 454 U.S. 1124 ("[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of the present circumstances, betoken a 'reasonable likelihood' of future transgressions") (citations omitted); *Hunt,* 591 F.2d,at 1219-20 (reversing the district court's denial of injunctive relief, and stating that a court of appeals should not hesitate "to reverse an order denying [injunctive] relief when it is evident that the trial court's discretion has not been exercised to effectuate the manifest objectives of the specific legislation involved.").

In contrast with other civil litigation, in an action for permanent injunctive relief, the Commission is not required to make a specific showing of irreparable injury or inadequacy of other remedies which private litigants must make. *CFTC v. Clothier*, 788 F. Supp. 490, 492-92 (D. Kan. 1992); *Muller,* 570 F.2d at 1300; *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141-42 (2d Cir. 1977), *cert. denied*, 438 U.S. 905 (1978); *United States v. Quadro Corp.*, 928 F. Supp. 688, 697 (E.D. Tex. 1996), *aff'd*, 127 F.3d 34 (5th Cir, 1997).[8] Additionally, because enforcement proceedings under 7 U.S.C. §13a-1, involve the public interest rather than a private controversy, the equitable jurisdiction of the district court is not to be denied or limited in the absence of a clear legislative command. *Hunt*, 591 F.2d at 1222 (*citing Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)); *Kelley v. Carr*, 442 F. Supp. 346, 360 (W.D. Mich. 1977), *aff'd* in part and *rev'd* in part, 691 F.2d 800 (6th Cir. 1980)

---

[8]     The courts that have considered the "proper showing" standard for issuing a permanent injunction to prohibit future violations of a remedial statute have held that there must be (1) a showing that illegal activity has occurred and (2) a reasonable likelihood that the wrong will be repeated. *Kelley v. Carr*, 567 F. Supp. 831, 839-40 (W. D. Mich. 1983); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 454 ("The District Courts also have jurisdiction to enter a permanent injunction 'upon a proper showing.'").

(granting default judgment for permanent injunction). In such a proceeding, the court's equitable powers are broader and more flexible than in private controversies. *Hunt*, 591 F.2d at 1223.

Based on the conduct described above, the Commission moves that Defendants VCI and Clark be permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in:

A.      further violations of 7 U.S.C. §§ 6*o*(1)(A), (B), 6m(1), 9(1) (2018); and  17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019);

B.      trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40) (2018)) for their own accounts, for any account in which they, separately or together, have a direct interest or indirect interest, or for any other account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

C.      entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2019) for their own personal account or for any account in which they, separately or together, have a direct or indirect interest;

D.      having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf, either separately or together;

E.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps and/or forex contracts;

27

F.      soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

G.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2019); and/or

H.      acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2019)), agent, officer or employee of any person registered, required to be registered, or exempted from registration or with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9) (2019).

**B.      Restitution**

Based on the conduct described above, the Commission moves that Defendants VCI and Clark be ordered, as well as any successors thereof, make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest.  In a civil enforcement action brought pursuant to 7 U.S.C. §13a-1, the district court may order ancillary equitable relief that it deems appropriate. *CFTC v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 193 (4th Cir. 2002) ("it is well settled that equitable remedies such as disgorgement are available to remedy violations of the [Act]"); *Co Petro Marketing Group, Inc*., 680 F.2d 573, 582-583 (9th Cir. 1982), ("unless a statute specifically or by inescapable inference commands the contrary, we are not to deny the inherent equitable powers of a court to afford complete relief"). In *Co Petro*, the U.S. Court of Appeals for the Ninth Circuit held that the ancillary relief available under Section 6c to enforce

28

compliance with the Act includes the power to order disgorgement, because "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains.") 680 F.2d at 583 (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 402 (1946)); see also *U.S. v. RX Depot, Inc.*, 438 F.3d 1052, 1062 (10th Cir. 2006) (availability of seizure under FDCA did not preclude court from employing disgorgement); *CFTC v. Noble Wealth Data Info. Servs.*, 90 F. Supp. 2d 676, 692-693 (D. Md. 2000).  Restitution is ancillary equitable relief within the power of the district court to grant and is an appropriate remedy for violations of the Act. See, *e.g., Co Petro*, 680 F.2d at 583-584.

The Court's determination of restitution in this case is governed by its equitable powers to make whole the victims of Defendants' fraud. The determination of restitution is not dependent on submissions of claims by the victims. Rather, the pervasive and systematic nature of the Defendants' fraud makes all customer funds received subject to restitution. See *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999) (affirming that the systematic and pervasive nature of fraud renders all funds received by defendants unlawful, but limiting the period of disgorgement to the period of time as to which the district court received evidence of fraud); *see also CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 93 (2d Cir. 1986) (affirming imposition of disgorgement where fraud was so pervasive that all profits were illegally derived).

Restitution is measured by the amount invested by customers less any refunds made by the Defendants. *Noble Wealth*, 90 F. Supp. 2d at 693. See also *CFTC v. Marquis Fin. Mgt. Systems, Inc.*, 2005 WL 3752232, at *6 (E.D. Mich. 2005) (ordering restitution in the amount of net customer deposits); *Rosenberg*, 85 F. Supp. 2d at 455 (ordering restitution in amount of customer deposit). In this case, Defendants received deposits of $534,829 from 72 customers.

[Samuel Decl. ¶¶ 36, 43]. Taking into account payments made by Defendants to certain customers to perpetuate the fraud, Defendants owe $450,302 to 72 VCI customers who lost all or a portion of their investments. [Samuel Decl. ¶¶ 43-45]. Accordingly, the Commission respectfully requests that the Court order the Defendants, jointly and severally, to make restitution to customers in the amount of $450,302. (Samuel Declaration ¶¶ 36, 43).

## C.  Civil Monetary Penalty

Based on the conduct described above, the Commission moves that Defendants VCI and Clark be ordered, as well as any successors thereof, pay civil monetary penalties. 7 U.S.C.§13a-1(d)(1) provides "the Commission may seek and the Court shall have jurisdiction to impose . . . on any person found in the action to have committed any violation, a civil penalty in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation." (emphasis added). The Commission Regulations adjust the statutory civil monetary penalty of $100,000 for inflation. 17 C.F.R. § 143.8. For the period at issue here, the statutory civil monetary penalty is $182,031 for each violation. *Id.*

The Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). Among the factors to be considered in setting the fine are the following: the seriousness of the violations as determined by the relationship of the violation to the regulatory purpose; whether the violation was an isolated 'mistake' arising from an ambiguous statutory duty or from circumstances that are unique and unforeseeable; the particular mitigating or aggravating circumstances presented by the unique facts of the individual conduct at issue; any benefit to the violator; any harm to the investors; any attempt to cure the violations; post violation conduct;

30

cooperation with authorities; and any attempt to provide restitution. *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1177 (D. Utah 2006) (quotations omitted).

Seriousness of the Violation

Conduct that violates the core provisions of the Act, such as customer fraud, should be considered extremely serious. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995). In *JCC, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit upheld the district court order imposing a civil monetary penalty, finding that "[c]onduct that violates the core provisions of the Act's regulatory system – such as manipulating prices or defrauding customers should be considered very serious even if there are mitigating facts and circumstances." Id. at 1571-72.  *U.S. Commodity Futures Trading Commn. v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 384 (W.D.N.C. 2012) (Conduct that violates the core provisions of the Act, such as customer fraud, should be considered extremely serious).

No mitigating facts or circumstances exist in the case at bar. Defendant Clark, directly and through VCI, misappropriated at least $450,302 from 72 customers for personal or business expenses through their fraudulent schemes. [Samuel Decl. ¶¶ 36, 43].  Defendants' fraud not only was extremely serious, but also repetitive and brazen.  Defendants benefitted from their fraud by misappropriating pool participant funds and directly harmed their victims.  Moreover, Defendants have not taken any action to mitigate the harm they have caused.  Indeed, they have failed to even answer the Commission's complaint.  *Commodity Futures Trading Commn. v. Trade Exch. Network Ltd*., 318 F. Supp. 3d 26, 32 (D.D.C. 2018) (Defendant did not mitigate violations that were not isolated and deserved a civil monetary penalty).

Accordingly, , the Commission respectfully moves this Court to order the Defendants to pay a civil monetary penalty in the amount of triple the monetary gain of the Defendants, which would total $1,350,906  plus post judgment interest.

**D.      Miscellaneous**

The Commission respectfully requests that this Court enter an order requiring Clark and VCI to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2018) and an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

## XII.      CONCLUSION

Based on the foregoing, the Commission respectfully requests that the Court grant its Motion for Default Judgment, Permanent Injunction, Civil Penalties and Other Equitable Relief, enter final judgment against VCI and Clark, and issue a final Order that grants permanent injunctive relief, orders full restitution by VCI and Clark to defrauded customers, and imposes appropriate civil monetary penalties on VCI and Clark.

Date:   May 22, 2020

Respectfully submitted:

*/s/ Kim G. Bruno*

Kim G. Bruno, Senior Trial Attorney
Michael Solinsky, Chief Trial Attorney
1155 21st Street, NW,
Washington, D.C., 20581
Telephone:   (202) 418-5368 (Mr. Bruno)
and (202) 418-5384 (Mr. Solinsky)
Facsimile:    (202) 818-3111
E-mail:  kbruno@cftc.gov,
msolinsky@cftc.gov

Plaintiff
Commodity Futures Trading Commission

I, Kim G. Bruno, hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).  See ECF # 28.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of May, 2020, I caused a true and correct copy of the foregoing to be filed electronically and served by UPS Overnight Courier on the party below:

Breonna S. Clark (*pro se*)
2538 South Anaheim Street, #302
Aurora, CO 80014-1474

E-mail:  bdansimon89@gmail.com; clarkbre@aol.com, thetattedinvestor@gmail.com; info@ventureci.com; E.clark12311@gmail.com;  elliotclark@ventureci.com; eclark.12311@gmail.com