## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-0382-DDD-MEH

COMMODITY FUTURES TRADING COMMISSION,

                    Plaintiff,

        v.

VENTURE CAPITAL INVESTMENTS LTD. and BREONNA S. CLARK, a/k/a Eliot
Clark a/k/a Alexander Pak d/b/a Venture Capital Investments and The Life Group,

Defendants.

---

**[PROPOSED] ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT
INJUNCTION, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER
STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS
VENTURE CAPITAL INVESTMENTS LTD. and BREONNA S. CLARK**

---

1.       On February 14, 2020, the Commodity Futures Trading Commission

("Commission" or "Plaintiff") filed a Complaint charging Defendants Venture Capital

Investments Ltd. ("VCI") and Breonna S. Clark ("Clark") (collectively "Defendants") with

violating, from at least March 1, 2018 through at least June 30, 2019 ("Relevant Period"),  7

U.S.C. §§ 6o(1)(A), (B), 6m(1), 9(1) (2018); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019).

2.       Defendants were personally served with the summons and Complaint pursuant to

Rule 4(c)(2) of the Federal Rules of Civil Procedure.  Specifically, on February 18, 2020,

Defendants VCI and Clark were served personally with the summons, complaint and court orders

(ECF ##6, 8 and 10) and VCI was also served, on February 27, 2020, at its registered agent's

address in Las Vegas, Nevada. (ECF #7).

3.      VCI was a Colorado Limited Liability Company with its principal place of business in Colorado and not an infant, incompetent person, or currently in military service. Clark is an individual who is not an infant, incompetent person or currently in military service.

4.      VCI and Clark have not pleaded or otherwise defended this action in response to the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1) and the Clerk of the Court entered defaults against Clark on March 17, 2020 (ECF # 13) and VCI on March 23, 2020 (ECF # 23).  Accordingly, Defendants have failed to file any responsive pleadings; and, therefore, the facts alleged in the complaint should be taken as true for purposes of the Court's consideration of the Motion for Default Judgment against Defendants.  See Fed. R. Civ. P. 8(b); *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir.  2016) (A defaulting defendant admits the plaintiff's well-pleaded allegations of fact, and is precluded from challenging those facts.)

5.      The Commission has moved this Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose a restitution obligation and a civil monetary penalty.  The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

6.      ORDERED that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendant(s) is GRANTED.  Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Restitution, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings of Fact

The Parties

7.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2019).

8.      Defendant Venture Capital Investments Ltd. was a business organized under the laws of Colorado and registered as a limited liability company as of April 3, 2018 with its principal place of business in Denver, Colorado.  Clark was VCI's principal and manager.  VCI was dissolved on October 17, 2018.  VCI has never been registered with the Commission in any capacity.

9.      Defendant Breonna S. Clark, a/k/a Eliot Clark, a/k/a/ Alexander Pak, d/b/a Venture Capital Investments and The Life Group, currently resides in the Denver, Colorado area.  From at least March 1, 2018 to April 2, 2018, Clark solely controlled, operated and did business as Venture Capital Investments.  Subsequently, on April 3, 2018, Clark organized VCI as a limited liability company under the laws of Colorado.  On October 17, 2018, Clark dissolved VCI.  After VCI's dissolution, Clark operated and continued to do business as The Life Group.  Clark has never been registered with the Commission in any capacity.

**Defendants' Fraudulent Solicitations**

10.      During the Relevant Period, Defendants fraudulently solicited at least seventy-two pool participants to trade forex, Bitcoin or Altcoins in a commodity pool operated at various points by Clark or VCI. These solicitations occurred through social media (*e.g.*, Facebook and

Twitter), electronic mail, webinars, instant messaging and face-to-face meetings touted as "financial seminars" that were held in churches or in the home of one of the pool participants. In soliciting pool participants, Defendants made no attempt to determine if they were Eligible Contract Participants ("ECPs") under 7 U.S.C. §1a(18)(A)(xi) (2018).  In fact, most, if not all, of Defendants' pool participants were not ECPs.

11.     As a result of these solicitations, pool participants sent Defendants over $534,829. Rather than trade all pool participant funds, Defendants misappropriated at least $450,302 which were used for Ponzi-type payments and personal expenses. During the course of the solicitations Defendants falsely told prospective pool participants that Defendants had trading experience and expertise, had an excellent track record, and promised future profitability trading forex and virtual currencies.

For example, Defendants made the following false statements in:

a.     an October 1, 2018 electronic mail sent to prospective pool participants, Defendants claimed that they had a "master team of traders [able to] execute the Foreign Exchange markets with precision and accuracy."

b.     an April 12, 2018 Facebook posting, "[t]he average IRA and 401k yield a 12-19% return a year.  With Investing in Venture you could yield 12-16% per month."

c.     a May 26, 2018 Facebook posting, "[o]ur Forex Fiat trading has secure (sic) 21% this month".

d.     a June 28, 2018 VCI's Facebook page posting: "We have closed the month of June with a 19% return to our clients!!!"

e.      an April 16, 2018 VCI Twitter account posting, "[w]e specialize in trading your capital like the Banks and Large Institutions that only pay you a return .1% - 1.5% on average in your savings account. We return our clients on average 12-21% monthly."

f.       an April 16, 2018 instant message to a prospective pool participant, "[t]his is a Forex Fund investment that pays a 12-21% monthly ROI. We also have crypto investments which return 18% weekly."

g.      an April 14, 2018 VCI Twitter posting, that they have "revolutionized the art of Forex trading" and specialized in "innovative calculated trading and risk management to give our clients the largest return on their capital."

12.      In fact, Defendants did not possess trading experience and expertise, have an excellent track record, and their promises of future profitability were fraudulent.

13.      Defendants' statements that they had trading experience and expertise is contradicted by the fact that, Clark, as Commodity Trading Advisor ("CTA") for the VCI pool: 1) had very little trading experience; and 2) lost what little money Clark traded on behalf of the pool participants.  In addition, one of the "master traders" touted by Clark as "highly skilled and trained" was a truck driver who provided administrative assistance to VCI.

14.      Further, Clark did not have an excellent track record trading.  In fact, Clark's claims of, among other things:  1) 12-16% monthly returns; 2) that VCI's Forex Fiat trading secured 21% monthly; and 3) that VCI returned on average 12-21% monthly are simply false. What little trading Clark engaged in was unprofitable and Defendants misappropriated the bulk of pool participant funds. Defendants' claims of future profitability are also false.

15.      Defendants also made misrepresentations regarding the risk of loss involved with trading forex, Bitcoin and Altcoins.  For example:

    a.    in an April 17, 2018 electronic mail, Clark circulated a PowerPoint Presentation to prospective pool participants promising that pool participants received a "capital lock" which protected pool participants' principal capital from any risk of loss.

    b.    in an October 1, 2018 circular to prospective pool participants, that they had implemented "stringent trading plans . . . to safeguard all investor capital to ensure minimal loss."

    16.    Defendants' statements above were false.  Defendants did not have a "capital lock" nor did they have "stringent trading plans. . . to safeguard all investor capital to ensure minimal loss." Rather than safeguard pool participant funds, Defendants misappropriated the bulk of their funds.

**Defendants Misappropriated Pool Participant Funds**

    17.    During the Relevant Period, Defendants instructed pool participants to send their funds directly to VCI's bank accounts at J.P. Morgan Chase Bank N.A. and US Bank N.A. Defendants also instructed pool participants to send funds through service providers such as PayPal, Zelle, Venmo, Cash App and a Bitcoin wallet.

    18.    During the Relevant Period, Defendants received at least $534,829 in pool participant funds. Of this amount, Defendants transferred approximately $121,165 to various cryptocurrency and forex trading accounts in the name of Breonna Clark at cryptocurrency and forex exchanges.  Of this amount, approximately $37,282 was returned from cryptocurrency and forex trading accounts to VCI and/or Clark bank accounts. The remaining approximately $83,883 was lost trading. Defendants spent $644 for business expenses.

Defendants used the remaining pool participants' funds, at least $450,302, to pay for Clark's personal expenses, including the purchase or lease of a BMW 5 series automobile, the

purchase of jewelry, gas, groceries, cash withdrawals totaling over $93,000, and to make Ponzi-type payments to pool participants to create the illusion of profitability.

**Defendants Concealed Their Misappropriation**

19.     To conceal their misappropriation, Defendants sent pool participants account statements which purported to show trading gains.  The account statements were a sham.  For example, one pool participant received a November 1, 2018 statement showing more than a 67% return over a 14 week period. Another pool participant received a May 25, 2018 account statement showing a 26% return for the month. These statements were false as little of the pool participants' funds were used to trade and what trading was done was unprofitable. Defendants concealed their misappropriation by making Ponzi-type payments to pool participants. These payments purportedly represented profits that Defendants made on behalf of pool participants.

20.     At other times during the Relevant Period, pool participants sought to withdraw their funds.  In several of these instances, Clark ceased communicating with these pool participants and blocked these pool participants on social media, including VCI's Facebook page.

21.     Clark also told pool participants that a "CFTC audit" was a reason he could not return pool participants' funds.  In fact, Clark's statement that Defendants were subject to a CFTC "audit" was false.  No such CFTC "audit" ever occurred.  Defendants never returned funds to most of those pool participants who requested their money back.

**Clark Was a Controlling Person of Venture Capital Investment Ltd.**

22.     At all times, Clark was a controlling person of VCI.  Clark founded and organized VCI, acted as its principal and manager, and was in charge of marketing and pool participant relations.  Clark either directly or indirectly controlled content for the VCI Facebook page and

Twitter account, opened bank accounts and was the signatory on such bank accounts and controlled the Bitcoin wallet address to which pool participants were directed to deposit Bitcoin. Clark was in charge of hiring employees and contractors for VCI.  Clark acted in bad faith or knowingly induced VCI's fraudulent acts.

B.      Conclusions of Law

**Jurisdiction and Venue**

23.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, 7 U.S.C. § 13a-1(a) (2018), authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  7 U.S.C. § 2(c)(2)(C)(vii) (2018), provides the CFTC with jurisdiction over the forex solicitations and transactions at issue in this action.

24.      Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the Defendants reside or transacts business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among other places.

25.      By the conduct described in paragraphs 1 through 22 above, in connection with contracts of sale of commodities in interstate commerce, that is, retail forex and Bitcoins by intentionally or recklessly, (1) misappropriating pool participant funds, (2) making material misrepresentations about Defendants' trading expertise, track record, profitability, and

minimizing the risk of loss, and (3) creating and distributing to pool participants fabricated account statements, Defendants violated 7 U.S.C. § 6*o*(1)(A) and (B) (2018),   VCI and/or Clark while (a) acting as a CPO or CTA; (b) made material misrepresentations, misleading statements, or omissions; (c) with scienter; (d) in connection with the purchase or sale of a commodity. *CFTC v. Emini Experts, LLC*, 2016 WL 7666148 at *4 (M.D. Fla. March 29, 2016), adopted, 2016 WL 3098199 (M.D. Fla June 3, 2016).  See also *CFTC v. Schafer*, 1997 WL 33547 409 at *5, *8 (S.D. Tex. Dec. 23, 1997) (noting that elements under 7 U.S.C. § 6*o* are identical to those under 7 U.S.C. § 6b(a)(ii) and track the elements of a common law action for fraud);  *CFTC v. Eq. Fin. Group LLC*, 572 F.3d 150, 159–60 (3d Cir. 2009) (Scienter may be satisfied, either by conscious behavior or recklessness, when a defendant deceives, manipulates, or defrauds); *First Commodity Corp. of Boston v. CFTC*, 676 F.2d 1, 6–7 (1st Cir.1982) (a reckless misrepresentation suffices when "one … departs so far from the standards of ordinary care that it is very difficult to believe the speaker was not aware of what he was doing").

26.    By the conduct described in paragraphs 1 through 22 above, VCI and Clark directly violated 7 U.S.C. § 6*o*(1)(A)-(B) while acting as CPOs because they, among other things, intentionally or recklessly:  (1) misappropriated pool participant funds; (ii) made material misrepresentations about Defendants' trading expertise, track record, profitability, and minimized the risk of loss; and (3) created and distributed to pool participants fabricated account statements.

27.    By the conduct described in paragraphs 1 through 22 above, Clark directly violated 7 U.S.C. § 6*o*(1)(A)-(B) while acting as a CTA, because among other things, intentionally or recklessly, Clark:  (1) misappropriated pool participant funds; (ii) made material misrepresentations about Defendants' trading expertise, track record, profitability, and

minimized the risk of loss; and (3) created and distributed to pool participants fabricated account statements.

28.     By the conduct described in paragraphs 1 through 22 above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a), by intentionally or recklessly using a "manipulative or deceptive device or contrivance" "in connection with . . . [the] contract of sale of [a] commodity in interstate commerce," namely Bitcoins.

   a.     First, more specifically, Defendants violated Section 6(c)(1) and Regulation 180.1(a)(1) by misappropriating customer funds.  This type of misappropriation falls squarely within the Act and Regulations and has been recognized as a violation subject to an enforcement action.  *See CFTC v. McDonnell*, 332 F.Supp.3d 641, 717-19, 723 (E.D.N.Y. 2018) (finding defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)  by misappropriating funds and making misrepresentations); *CFTC v. Leben*, No. 3:14-cv-866, 2016 WL 7354359, at *5 (D.S.C. Aug. 5, 2016) (finding that the defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by misappropriating funds).

   b.     Second, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(2) by making multiple misrepresentations to its customers which were untrue or misleading statements of a material fact including representing that Defendants would purchase, among other things, Bitcoins and sending pool participants falsified account statements, in which Defendants misrepresented that Bitcoins been purchased for these pool participants.  The same material misrepresentations made with scienter regarding Defendants' violation of 7 U.S.C. § 6*o*(1) also apply to Defendants' violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

c.      Third, Defendants also violated 17 C.F.R. § 180.1(a)(3) as their conduct "operate[d] or would operate as a fraud or deceit upon any person."  The language of 17 C.F.R. § 180.1(a)(3) tracks that of 7 U.S.C. § 6*o*(1)(B), which only requires a finding of recklessness as a prerequisite for establishing liability.  *See*, *e.g., Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000); *Messer v. E.F. Hutton & Co*., 847 F.2d 673, 678-79 (11th Cir. 1988).  *CFTC v. Kraft Foods Group, Inc*., 153 F. Supp. 3d 996, 1015 (N.D. Ill. 2015) (17 C.F.R. § 180.1 requires that Defendant's scienter must be shown to be either reckless or intentional; and this standard can be met by allegations of conduct showing an extreme departure from the standards of ordinary care.).

29.      By the conduct described in paragraphs 1 through 22, *i.e.,* during the period from at least March 1, 2018 to April 2, 2018 and October 17, 2018 to June 30, 2019, Clark acted as a CPO.  Further, from April 3, 2018 to October 17, 2018, VCI acted as a CPO.  During these time frames Clark and VCI solicited and accepted funds for a pooled investment vehicle from non-ECPs for the purpose of engaging in retail forex transactions. VCI and Clark violated 7 U.S.C. § 6m(1)(2018) and 17 C.F.R. § 5.3(a)(2)(i)(2019) by engaging in these activities without having registered as CPOs.

30.      By the conduct described in paragraphs 1 through 22 above, Clark acted as a CTA because for compensation or profit, Clark advised pool participants who were not ECPs on trading retail forex.  In addition, Clark acted as a CTA because Clark exercised discretionary trading authority or obtained written authorization to exercise discretionary trading authority over pool accounts for or on behalf of persons who were not ECPs in connection with retail forex transactions.  Clark violated 7 U.S.C. § 6m(1)(2018) and 17 C.F.R. § 5.3(a)(3)(i)(2019) by engaging in these activities without having registered as a CTA.

31. Clark controlled VCI, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, VCI's act or acts in violation of the Act and Regulations; therefore, pursuant to 7 U.S.C. § 13c(b) (2018), Clark is liable for VCI's violations of 7 U.S.C. §§ 6o(1)(A), (B), 6m(1), 9(1) (2018); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019).

32. The foregoing acts, omissions, and failures of Clark occurred within the scope of her employment, office, or agency with VCI; therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) (2018), and 17 C.F.R. § 1.2 (2019), VCI is liable for Clark's acts, omissions, and failures in violation of 7 U.S.C. §§ 6o(1)(A), (B), 6m(1), 9(1) (2018); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a) (2019).

33. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Clark will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

II. **PERMANENT INJUNCTION**

**IT IS HEREBY ORDERED THAT**:

34. Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1 (2018), the Commission has shown that Defendants should be permanently enjoined. The Commission has shown a *prima facie* case that, per 7 U.S.C. § 13a-1, Defendants have engaged, or are engaging, in illegal conduct, and that there is a likelihood of future violations. *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). Although past misconduct does not require the conclusion that there is a likelihood of future misconduct, it is "highly suggestive of the likelihood of future violations." *CFTC v. Hunt,* 591 F.2d 1211, 1220 (7th Cir. 1979), *cert. denied,* 442 U.S. 921 (1979). Accordingly, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, that is made, or to be made, for or on behalf of, or with, any other person in violation of 7 U.S.C. § 6*o*(1)(A), (B).

b.      Use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate in violation of 7 U.S.C. § 9(1) (2018) and 17 C.F.R. § 180.1(a) (2019).

c.      While acting as a CPO and engaged in retail forex transactions, make use of the mails or any means or instrumentality of interstate commerce in connection with its business unless registered with the CFTC in violation of 7 U.S.C. § 6m(1) and 17 C.F.R. § 5.3(a)(2)(2019).

d.      While acting as a CTA and engaged in retail forex transactions, make use of the mails or any means or instrumentality of interstate commerce in connection with its business unless registered with the CFTC in violation of 7 U.S.C. § 6m(1) and 17 C.F.R. § 5.3(a)(3)(2019).

35.     Clark is also permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40) (2018));

b.      Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2019), for their own personal account or for any account in which they have a direct or indirect interest;

c.      Having any commodity interests traded on his/her/their/its behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9) (2018); and/or

g.      Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

III.    RESTITUTION, AND CIVIL MONETARY PENALTY

A.      Restitution

36.     Damages also may be awarded if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts. *Olcott v. Delaware Flood Co*., 327 F.3d 1115, 1125 (10th Cir. 2003); *See also*, *SEC v Lines*, No. 07 Civ. 11387(DLC)(DF), 2011 WL 3611350, at *4 (S.D. N.Y. June 7, 2011) (decision of

whether a hearing is necessary regarding the matter of damages is left to the discretion of the district court).

37.     The district court may order ancillary equitable relief that it deems appropriate. See 7 U.S.C. §13a-1. *CFTC v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 193 (4th Cir. 2002) ("it is well settled that equitable remedies such as disgorgement are available to remedy violations of the [Act]"); *Co Petro Marketing Group, Inc*., 680 F.2d 573, 582-583 (9th Cir. 1982), ("unless a statute specifically or by inescapable inference commands the contrary, we are not to deny the inherent equitable powers of a court to afford complete relief"). In *Co Petro*, the U.S. Court of Appeals for the Ninth Circuit held that the ancillary relief available under Section 6c to enforce compliance with the Act includes the power to order disgorgement, because "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains.") 680 F.2d at 583 (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 402 (1946)); see also *U.S. v. RX Depot, Inc.*, 438 F.3d 1052, 1062 (10th Cir. 2006) (availability of seizure under FDCA did not preclude court from employing disgorgement); *CFTC v. Noble Wealth*, 90 F.Supp.2d 676, 692-693 (D. Md. 2000), *aff'd in part, den. in part*, *Commodity Futures Trading Commn.. v. Baragosh*, 278 F.3d 319 (4th Cir. 2002), *cert. den.* 537 U.S. 950 (2002). Restitution is ancillary equitable relief within the power of the district court to grant and is an appropriate remedy for violations of the Act. See, *e.g., Co Petro*, 680 F.2d at 583-584.

38.     The Court's determination of restitution in this case is governed by its equitable powers to make whole the victims of Defendants' fraud. The determination of restitution is not dependent on submissions of claims by the victims. Rather, the pervasive and systematic nature of the Defendants' fraud makes all customer funds received subject to restitution. See *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999) (affirming that the systematic and pervasive nature

of fraud renders all funds received by defendants unlawful, but limiting the period of disgorgement to the period of time as to which the district court received evidence of fraud); *see also CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 93 (2d Cir. 1986) (affirming imposition of disgorgement where fraud was so pervasive that all profits were illegally derived).

39.     Restitution is measured by the amount invested by customers less any refunds made by the Defendants. *Noble Wealth*, 90 F. Supp. 2d at 693. See also *CFTC v. Marquis Fin. Mgt. Systems, Inc.*, 2005 WL 3752232, at *6 (E.D. Mich. 2005) (ordering restitution in the amount of net customer deposits); *Commodity Futures Trading Commn. v. Rosenberg,* 85 F. Supp. 2d 424, 455 (D.N.J. 2000)(ordering restitution in amount of customer deposit). In this case, the Court is satisfied that Defendants received deposits of $534,829 from 72 customers. Taking into account payments made by Defendants to certain customers to perpetuate the fraud, Defendants owe $450,302 to 72 VCI customers who lost all or a portion of their investments.

40.     Defendants shall pay, jointly and severally, restitution in the amount of $450,302 ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

41.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' pool participants, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments from Defendants and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

42.     Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "VCI-Clark Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

43.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers/pool participants/clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in paragraph 46 below.

44.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial

institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

45.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' pool participants during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

46.     The amounts payable to each pool participant shall not limit the ability of any pool participant from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

47.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

48.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

B.      Civil Monetary Penalty

49.     7 U.S.C.§13a-1(d)(1) provides "the Court shall have jurisdiction to impose . . . on any person found in the action to have committed any violation, a civil penalty in the amount of

not more than the higher of $100,000 or triple the monetary gain to the person for each violation." (emphasis added). The Regulations adjust the statutory civil monetary penalty of $100,000 for inflation. 17 C.F.R. § 143.8. For the period at issue here, the statutory civil monetary penalty is $182,031 for each violation. *Id*.

50.     The Court may fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). Among the factors considered by the Court are the following: the seriousness of the violations as determined by the relationship of the violation to the regulatory purpose; whether the violation was an isolated 'mistake' arising from an ambiguous statutory duty or from circumstances that are unique and unforeseeable; the particular mitigating or aggravating circumstances presented by the unique facts of the individual conduct at issue; any benefit to the violator; any harm to the investors; any attempt to cure the violations; post violation conduct; cooperation with authorities; and any attempt to provide restitution. *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1177 (D. Utah 2006) (quotations omitted).

51.     Conduct that violates the core provisions of the Act, such as customer fraud, should be considered extremely serious. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995). In *JCC, Inc*., the U.S. Court of Appeals for the Eleventh Circuit upheld the district court order imposing a civil monetary penalty, finding that "[c]onduct that violates the core provisions of the Act's regulatory system – such as manipulating prices or defrauding customers should be considered very serious even if there are mitigating facts and circumstances." Id. at 1571-72. *U.S. Commodity Futures Trading Commn. v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 384 (W.D.N.C. 2012) (Conduct that violates the core provisions of the Act, such as customer fraud, should be considered extremely serious).

52.     No mitigating facts or circumstances exist in the case at bar. Defendant Clark, directly and through VCI, misappropriated at least $450,302 from 72 customers for personal or business expenses through their fraudulent schemes. Defendants' fraud not only was extremely serious, but also repetitive and brazen.  Defendants benefitted from their fraud by misappropriating pool participant funds and directly harmed their victims.  Moreover, Defendants have not taken any action to mitigate the harm they have caused.  Indeed, they have failed to even answer the Commission's complaint.  *Commodity Futures Trading Commn. v. Trade Exch. Network Ltd*., 318 F. Supp. 3d 26, 32 (D.D.C. 2018) (Defendant did not mitigate violations that were not isolated and deserved a civil monetary penalty).

53.     Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of $1,350,900 ("CMP Obligation"), within ten days of the date of the entry of this Order.  If the CMP Obligation is not paid in full within ten days of the date of entry of this Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

54.     Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

        MMAC/ESC/AMK326
        Commodity Futures Trading Commission
        Division of Enforcement
        6500 S. MacArthur Blvd.
        HQ Room 181
        Oklahoma City, OK 73169

(405) 954-6569 office
(405) 954-1620 fax
9-AMC-AR-CFTC@faa.gov

55.     If payment by electronic funds transfer is chosen, Defendants shall contact Marie

Thorne or her successor at the address above to receive payment instructions and shall fully

comply with those instructions.  Defendants shall accompany payment of the CMP Obligation

with a cover letter that identifies Defendants and the name and docket number of this proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the form of payment to

the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre,

1155 21st Street, NW, Washington, D.C. 20581.

      D.      Provisions Related to Monetary Sanctions

56.     Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial

payment of Defendants' Restitution Obligation, Disgorgement Obligation, or CMP Obligation

shall not be deemed a waiver of his/her/their/its obligation to make further payments pursuant to

this Order, or a waiver of the Commission's right to seek to compel payment of any remaining

balance.

      A.      Cooperation

57.     Defendants shall cooperate fully and expeditiously with the Commission,

including the Commission's Division of Enforcement, in this action, and in any current or future

Commission investigation or action related thereto.  Defendants shall also cooperate in any

investigation, civil litigation, or administrative matter related to, or arising from, this action.

      IV.     Miscellaneous Provisions

58.     Notice:  All notices required to be given by any provision in this Order shall be

sent certified mail, return receipt requested, as follows:

Notice to Commission:

Rick Glaser
Deputy Director
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, NW
Three Layfayette Centre
Washington, D.C.  20581

Notice to Defendants

Breonna S. Clark (*pro se*)
2538 South Anaheim Street, #302
Aurora, CO 80014-1474
E-mail:  bdansimon89@gmail.com; clarkbre@aol.com, thetattedinvestor@gmail.com;
info@ventureci.com; E.clark12311@gmail.com;  elliotclark@ventureci.com;
eclark.12311@gmail.com

Notice to NFA:

Daniel Driscoll, Executive Vice President, COO
National Futures Association
300 S. Riverside Plaza, Suite 1800
Chicago, IL 60606-3447


All such notices to the Commission or the NFA shall reference the name and docket number of this action.

42.     Change of Address/Phone:  Until such time as Defendants satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

43.     Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

44.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Order.

45.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under the authority or control of any of the Defendants, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order forthwith and without further notice.

IT IS SO ORDERED on this _____day of _____, 2020.


_____
UNITED STATES DISTRICT JUDGE