**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:20-cv-00382-DDD-MEH

COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

VENTURE CAPITAL INVESTMENTS LTD, and BREONNA S. CLARK,

    Defendant.

## ORDER GRANTING
## MOTION FOR DEFAULT JUDGMENT

    Before the court is Plaintiff Commodity Futures Trading Commission's motion for default judgment against Defendants Venture Capital Investments, Ltd., and Breonna S. Clark. For the following reasons, the court **GRANTS** the motion.

### BACKGROUND

    Because this case is before the court on the Commission's motion for entry of default judgment and Defendants have failed to answer or otherwise respond to the complaint, the court deems as true the material well-pleaded allegations in the complaint. *Pers. Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [the defendant] admitted only facts well pleaded."). "In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits." *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014).

This case arises from Defendants' fraudulent solicitations of seventy-two participants to trade foreign and electronic currencies (also known as "forex"), including Bitcoin and Altcoin in a commodity pool operated by Defendants. Compl., Doc. 1 at ¶ 24. A "commodity pool" sounds like what it is: an entity formed to trade commodity interests, *see* 7 U.S.C. § 1a(10). Defendants found pool participants through social media, email, webinars, and face-to-face meetings. *Id.* A commodity pool isn't necessarily illegal, but this one was. Defendants ultimately solicited $535,829 from the pool participants, misappropriating $450,302 of that sum for personal use and, in a small-time imitation of a Bernie-Madoff-Ponzi scheme, for making payments to pool members so it appeared as though the pool was profitable. *Id.*

In the course of operating their fraudulent commodity pool, Defendants made numerous false statements of their experience and expertise in foreign and virtual currencies like Bitcoin. In October 2018, Defendants told a prospective pool participant that Defendants employed a "master team of traders [who could] execute the Foreign Exchange markets with precision and accuracy." *Id.* at ¶ 25. Earlier that year, Defendants posted on Facebook that in "investing in Venture you could yield [a] 12-16% [return] per month." *Id.* Other times they promised an "18% weekly" return on "crypto investments" and as much as a "21%" return on investment from Venture Capital. *Id.* In reality, Clark had little to no trading experience, Venture Capital had no team of highly experienced traders, and the pool money actually traded by Venture Capital and Ms. Clark was lost. *Id.* at ¶¶ 27–30.

Defendants misrepresented the risk of investing in cryptocurrency to pool participants. In April 2018, Defendants told prospective pool members that, if they joined the pool, they would receive a "capital lock," which would ensure the capital they invested would be protected from

loss. *Id.* at ¶ 32. Defendants reiterated this misrepresentation to potential pool participants in October 2018. *Id.*

Defendants' misrepresentations were successful—a total of seventy-two pool participants sent $534,829 to Defendants' bank accounts. *Id.* at ¶ 35. Of this, Defendants invested $121,165 in cryptocurrency trades that lost approximately $84,000. *Id.* at ¶ 36. With the remaining $450,302, Ms. Clark purchased a car, jewelry, and other personal items, and made payments to pool members so it appeared as though the commodity pool was profitable. *Id.* at ¶ 37. Defendants' concealed their scheme by sending out falsified account statements that showed trading gains. *Id.* at ¶ 38. One of these account statements reported a 67-percent return over a fourteen-week period. *Id.* Another account statement showed a 26-percent return over the last month. *Id.* When several pool participants requested to withdraw their funds, Ms. Clark falsely told them that an ongoing "CFTC audit" prevented her from permitting withdrawal. *Id.* at ¶ 41.

After investigation, the Commission filed this suit against Venture Capital and Ms. Clark on February 14, 2020, asserting four claims under the Commodity Exchange Act:

(1) fraud by a community pool operator or community trade advisor in violation of 7 U.S.C. § 6*o*(1);

(2) fraud by deceptive device in violation of 7 U.S.C. § 9(1);

(3) failure to register as a community pool operator in violation of 7 U.S.C. § 6(m)(1) and provisions implementing regulation, 17 C.F.R. § 5.3 (a)(2)(i); and

> (4) failure to register as a community trade advisor in violation of 7 U.S.C. § 6m(1) and that provision's implementing regulation, 17 C.F.R. § 5.3(a)(3)(i).

Doc. 1. On February 18, 2020, Venture Capital and Ms. Clark were served with the summons and the complaint. Docs. 6, 8, 10. Venture Capital's service agent was served on February 28, 2020. Doc. 7. Despite being served, Venture Capital and Ms. Clark did not answer or otherwise respond to the complaint, so the Commission moved the clerk of court for an entry of default against the Defendants. Doc. 12. The clerk entered default against Ms. Clark on March 17, 2020, and against Venture Capital on March 23, 2020. Docs. 13, 21. The Commission then moved for the now-pending motion for entry of default judgment. Doc. 29.

## ANALYSIS

Under Rule 55(b), after the clerk enters default, a court must enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. Default judgment may be entered by the clerk if the claim is for a "sum certain," Fed. R. Civ. P. 55(b)(1), but in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The purpose of a default judgment is to protect a diligent party against an unresponsive adversary. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991).

### I.  Jurisdiction

Before a court can enter default judgment it must ensure it has jurisdiction over the matter. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). The Court has subject matter jurisdiction under 28 U.S.C. § 1331, which grants jurisdiction to

federal courts over questions "arising under" federal law, and 28 U.S.C. § 1345, which grants federal district courts jurisdiction over civil suits "commenced by the United States." All of the Commission's claims are asserted under federal statutes or regulations, and this is a civil suit filed by the United States.

The Court also has personal jurisdiction over Defendants. The moving party bears the burden of proof to show that the Court has jurisdiction over Defendants under Colorado's long-arm statute and that they have minimum contacts with the state. *Dennis*, 115 F.3d at 771. But in the context of a motion for default judgment, the petitioner's burden is a minimal one: the petitioner "need only make a *prima facie* showing on these two questions if the motion is decided only on the basis the parties' affidavits and other written materials," as it is here. *Id.*; *see also Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (explaining that well-pleaded allegations in complaint are accepted as true for purposes of determining personal jurisdiction at pleading stage).

The complaint satisfies this standard. It alleges that Ms. Clark is a resident of Colorado and that she is the control-person of Venture Capital which is also located and incorporated in Colorado. Doc. 1 at ¶¶ 11–12. This is sufficient for the Court to exercise general personal jurisdiction over a defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (alterations adopted; citations omitted)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

## II.   Entry of Default Judgment

Having assured it has jurisdiction over this matter, the court must decide "whether the unchallenged facts constitute a legitimate cause of action" such that a judgment should be entered. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. & Proc.* § 2688, at 63 (3d ed. 1998)). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "A party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445- LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

On review of a motion for default judgment, if default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). The court deems the well-pleaded facts of the complaint to be true. *Vibe Tech., LLC v. Suddath*, No. 06-cv-00812, 2009 WL 2055186, at *1 (D. Colo. 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Undisputed facts set forth by the moving party in affidavits and exhibits are also accepted as true. *Id.*

### A. Count I: Fraud by a community pool operator or community trade advisor in violation of 7 U.S.C. § 6*o*(1)

7 U.S.C. § 6o(1), makes it

> unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool

> operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

*Id.* To be entitled to a default judgment, the undisputed facts must show that (1) Defendants were commodity trading advisors, commodity pool operators, or persons associated with them; (2) used an instrumentality of interstate commerce; (3) to make material misrepresentations; (4) with scienter; (5) in connection with the purchase or sale of a commodity. *U.S. Commodity Futures Trading Comm'n v. Wilson*, 19 F. Supp. 3d 352, 363 (D. Mass. 2014) ("The same intentional or reckless misappropriations, misrepresentations, and omissions of material fact violative of section [6]b of the Act ... also violate section [6]*o*(1)(A)-(B) of the Act." (quoting *CFTC v. Driver,* 877 F.Supp.2d 968, 978 (C.D. Cal. 2012)), *aff'd sub nom. Commodity Futures Trading Comm'n v. JBW Capital*, 812 F.3d 98 (1st Cir. 2016); *see also Stotler & Co. v. Commodity Futures Trading Comm'n*, 855 F.2d 1288, 1291 (7th Cir. 1988) ("Section 4*o* is a parallel statute forbidding fraud and misrepresentation by commodity trading advisors."). Each element is present here.

The undisputed facts show Ms. Clark meets the definition of "commodity trading advisor." A commodity trading advisor is a person who "for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in" commodities. 7 U.S.C. § 1a(12)(A). Notably, a person need not be registered as a commodity trading advisor with the commission to be considered a commodity

trading advisor. *Id.* It is undisputed that advised pool members directly and indirectly in the purchase and sale of foreign and virtual currencies. She thus acted as a commodity trading advisor.

The undisputed facts likewise show that Venture Capital meets the definition of "commodity pool operator." A "commodity pool operator" is a person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of trading in commodity interests." 7 U.S.C. § 1a(11)(A). Notably, a person need not be registered as a commodity pool operator with the Commission to be considered a commodity pool operator. *Id.* Here, it is undisputed that Venture Capital operated a commodity pool whose purpose was to trade foreign currency and virtual currencies. This element is thus satisfied.

The remaining elements are also present. Defendants used instrumentalities of interstate commerce to accomplish their scheme—namely, email and social media. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("We agree that the Internet is generally an instrumentality of interstate commerce."). They engaged in fraudulent conduct in relation to the sale of commodities. Among other things, Defendants (1) misrepresented their expertise and experience in trading foreign and virtual currencies; (2) misappropriated pool participants' funds; and (3) created false account statements it distributed to plan participants. This kind of conduct violates the Section 6*o* of the Commodity Exchange Act. *Commodity Futures Trading Comm'n v. Schafer*, No. CIV.A. H-96-1213, 1997 WL 33547409, at *8 (S.D. Tex. Dec. 23, 1997) ("Accordingly, it is generally well-understood that providing false or misleading account statements or misrepresenting other material facts constitutes fraud under Section 4o of the CEA." (citing *Commodity Futures Trading Comm'n v.*

*Schroeder,* Comm. Fut. L. Rep. (CCH) ¶ 22, 394 at 29,805 (D. Kan. Sept. 28, 1984)); *see also U.S. Commodity Futures Trading Comm'n v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012) ("Actionable misrepresentations include those made to customers when soliciting their funds."), *aff'd sub nom. Commodity Futures Trading Comm'n v. Driver*, 585 F. App'x 366 (9th Cir. 2014).

The undisputed facts thus demonstrate that Defendants violated 7 U.S.C. § 6*o*.

### B. Count II: Fraud by deceptive device in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)

In Count II, the Commission alleges that Defendants violated 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a) by fraudulently deceiving pool members. Under 7 U.S.C. § 9(1), it is unlawful for any person to

> use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate.

And as pertinent here, 17 C.F.R. § 180.1(a) makes it

> unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

"To prove a violation of . . . 7 U.S.C. § 9(1)[] and Regulation 180.1(a), 17 C.F.R. § 180.1(a) . . . , the Commission must show that Defendants

engaged in prohibited conduct (i.e., employed a fraudulent scheme; made a material misrepresentation, misleading statement[,] or deceptive omission; or engaged in a business practice that operated as a fraud); with scienter; and in connection with a contract of sale of a commodity in interstate commerce." *Commodity Futures Trading Comm'n v. McDonnell*, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018) (citing *See CFTC v. McDonnell*, 287 F.Supp.3d 213, 226 (E.D.N.Y. 2018); *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018); *CFTC v. Hunter Wise Commodities, LLC*, 21 F.Supp.3d 1317, 1347 (S.D. Fla. 2014)). Here, the undisputed facts establish each element.

The facts show that Defendants used a deceptive device or contrivance in connection with the sale of a commodity in interstate commerce by misappropriating pool-member funds to purchase electronic currencies like Bitcoin. *See McDonnell*, 332 F.Supp.3d at 717–19, 723 (finding defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by misappropriating funds and making misrepresentations); *see also Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 498 (D. Mass. 2018) (collecting cases and noting that bitcoin is a commodity within the meaning of 9 U.S.C. § 9(1)). As described above, Defendants likewise misrepresented their expertise in trading electronic currencies, misappropriated pool participant funds, and lied about the profitability of the pool. And the facts show that they acted with scienter. They knew, for example, that the account statements they issued were false. The undisputed facts establish a violation of Section 9(1).

### C. Counts III and IV: Failure to register as a commodity pool operator or a commodity trade advisor in violation of 7 U.S.C. § 6(m)(1), and 17 C.F.R. §§ 5.3 (a)(2)(i) and 5.3(a)(3)(i)

7 U.S.C. § 6m(1) makes it unlawful for any Commodity Pool Operator or Commodity Trade Advisor to make use of the mails or any means or instrumentality of interstate commerce in connection with its business unless it is registered with the Commission. Count three of the complaint alleges that Ms. Clark and Venture Capital operated as an unregistered Commodity Pool Operators. And Count Four of the Complaint alleges that Ms. Clark operated as an unregistered Commodity Trade Advisor. The Commission is entitled to default judgment on these claims.

17 C.F.R. § 5.3(a)(2)(i) makes it unlawful for any Commodity Pool Operator engaged in retail foreign-exchange transactions defined in 17 C.F.R. § 5.1(d)(1), to act as a Commodity Pool Operator without being registered. As pertinent here, 17 C.F.R. § 5.1(d)(1) defines a Commodity Pool Operator as "any person who operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions." The undisputed facts show that from March 1 to April 2, 2018 and again from October 17, 2018 to June 30, 2019, Ms. Clark acted as a Commodity Pool Operator by soliciting funds for the pool and trading the funds in the pool. Compl. at ¶¶ 18–20, 24. Venture Capital performed the same function from April 3, 2018 to October 17, 2018, VCI acted as a CPO. *Id.* at ¶¶ 20, 22.

17 C.F.R. § 5.3(a)(3)(i) makes it unlawful for any Commodity Trade Adviser engaged in foreign-exchange transactions to do so without being registered with the Commission. As explained above, Ms. Clark meets the definition of Commodity Trading Advisor and she wasn't registered as such with the Commission. Compl. at ¶ 49. The undisputed facts thus

establish that the Commission is entitled to a default judgment on Counts Three and Four of the Complaint.

### III. Entitlement to Relief

Even if a plaintiff has a legal basis for relief, a default judgment cannot be entered until the amount of damages or the entitlement to injunctive relief has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The Commission seeks (1) an injunction; (2) restitution; (3) a civil monetary penalty; and (4) costs.

#### A. Injunctive Relief

7 U.S.C. § 13a-1(a) empowers the court to enter an injunction in an action brought by the Commission. *Id.* ("Whenever it shall appear to the Commission that any person has engaged [in activity] constituting a violation of any provision of this chapter or any rule thereunder the Commission may bring an action to enjoin such act") (internal omissions and ellipses omitted); *see also* 7 U.S.C. § 13a-1(b)(" Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond."). "An injunction prohibiting a party from engaging in conduct that violates the provisions of a statute is appropriate when there is a likelihood that, unless enjoined, the violations will continue." *Commodity Futures Trading Comm'n v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250–51 (2d Cir. 1986) (citing *CFTC v. Co Petro Marketing Group, Inc.,* 680 F.2d 573, 582 n. 16 (9th Cir.1982); *SEC v. Holschuh,* 694 F.2d 130, 144-45 (7th Cir. 1982)). "The traditional requirements for injunctive relief such as irreparable injury or inadequacy of other remedies are not required under § 13a–1, and the Commission need only show a likelihood of a violation." *Commodity Futures Trading*

*Comm'n v. Clothier*, 788 F. Supp. 490, 492–93 (D. Kan. 1992) (citations omitted). A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct." *Am. Bd. of Trade, Inc.*, 803 F.2d at 1250–51.

Under these standards, the Commission is entitled to an injunction. Defendants have committed fraud in connection with the operation of a commodity pool and have illegally operated an unregistered commodity pool, which is sufficient for the court to infer future illegal conduct along these lines.

### B. Restitution

The court is empowered to award of restitution under the Commodity Exchange Act. 7 U.S.C. § 13a-1(d)(3) ("In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)."); *see also Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 193 (4th Cir. 2002) ("It is well settled that equitable remedies such as disgorgement are available to remedy violations of the CEA."). "Generally, the amount of restitution in FTC consumer redress cases is the purchase price of the relevant product or business opportunity, less any refunds or money earned." *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1143 (E.D. La. 1991).

Based on the foregoing conduct of Defendants, the court will order restitution in the amount of $450,302, entailing deposits Defendants received ($534,829), less the amount Defendants repaid to their customers ($84,527).

### C. Civil Monetary Penalty

The court is empowered to impose a civil monetary penalty under the Act "in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a-1(d)(1)(A). The Commission Regulations adjust the statutory civil monetary penalty of $100,000 for inflation. 17 C.F.R. § 143.8. For the period at issue here, the statutory civil monetary penalty is $185,242 for each violation. *Id.* "Civil penalties should be imposed to act as a deterrent, but should be proportional to the gravity of the offenses committed." *Commodity Futures Trading Comm'n v. Brockbank*, 505 F. Supp. 2d 1169, 1177 (D. Utah 2007), *aff'd*, 316 F. App'x 707 (10th Cir. 2008). While the Commission requests the maximum possible penalty—three times the amount Defendants gained for the conduct, or $1,350,906—the court deems this amount excessive in the light of its order for the Defendants to pay restitution. The court will order a civil monetary penalty in the amount of the gain Defendants received, or $450,302.[1] This amount is in addition to the restitution discussed above.

### CONLCUSION

The Commission's motion for entry of default judgment (Doc. 29) is **GRANTED**, and the clerk is directed to enter default judgment against Defendants in the principal sum of $900,604 and costs. It is **FURTHER ORDERED** that Defendants, their officers, agents, servants,

---

[1] The Commission also requests costs under 28 U.S.C. § 1920. The court grants that request. *See* Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

- 14 -

employees, and attorneys, and any other persons who are in active concert or participation with them are permanently enjoined from engaging in:

- A. further violations of 7 U.S.C. §§ 6*o*(1)(A), (B), 6m(1), 9(1); and 17 C.F.R. §§ 5.3(a)(2), (3), 180.1(a);

- B. entering into any transactions involving "commodity interests," 17 C.F.R. § 1.3, for their own personal account or for any account in which they, separately or together, have a direct or indirect interest;

- C. having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf, either separately or together;

- D. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps and/or forex contracts;

- E. soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

- F. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from

registration with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9); and/or

A. acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration or with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9).

Further, the case shall be closed.

DATED: November 2, 2020         BY THE COURT:

_____
Hon. Daniel D. Domenico