IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-0382-MEH

COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

VENTURE CAPITAL INVESTMENTS LTD. and BREONNA S. CLARK, a/k/a Eliot Clark a/k/a Alexander Pak d/b/a Venture Capital Investments and The Life Group,

    Defendants.

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO REOPEN AND RENEWED MOTION TO APPOINT THE
NATIONAL FUTURES ASSOCIATION AS POST-JUDGMENT MONITOR**

Plaintiff Commodity Futures Trading Commission ("Commission"), proceeding pursuant to Fed. R. Civ. P. 60(b)(6) and D.C.COLO.LCivR 7.1, respectfully submits this memorandum in support of its Motion to Reopen and Renewed Motion to Appoint the National Futures Association as Post-judgment Monitor ("Motion"). For the reasons stated below, and because good cause exists, the Court should grant the Motion and appoint the National Futures Association ("NFA") as post-judgment Monitor.

**I.**

**BACKGROUND**

On May 22, 2020, the Commission filed Plaintiff's Motion for Default Judgment, Permanent Injunction, Civil Penalties and Other Equitable Relief [DE #. 29] (**"**Default Motion"). By Order dated November 2, 2020, the Court granted the Default Motion in substantial part, including awards of restitution in the amount of $450,302 and a civil monetary penalty of $450,302, except that the Court denied without prejudice the Commission's request that the

Court appoint the NFA as post-judgment Monitor. [DE #30] ("Default Order"). The Commission had asked the Court to appoint the NFA as a post-judgment Monitor charged with administering any restitution payments made by the defendants pursuant to the Default Order. Plaintiff's *Proposed Order For Final Judgment By Default, Permanent Injunction, Civil Monetary Penalties, Restitution, And Other Statutory And Equitable Relief Against Defendants Venture Capital Investments Ltd. And Breonna S. Clark*, [DE #29-4, ¶¶ 42-48]. The Commission sought to appoint the NFA to receive any restitution payments and transmit those funds to the victims of defendants' fraud scheme. The Court's order, without comment, declined to appoint the NFA.

This memorandum sets forth the factual and legal basis for appointing the NFA as post-judgment Monitor. Specifically, as explained in detail below, the NFA is an expert and experienced Monitor, the NFA has volunteered to serve as Monitor in this action, and the Court has the equitable authority to appoint the NFA as Monitor.

## II.
## ARGUMENT

### A. There is a Good Cause to Reopen this Matter To Appoint the NFA as Monitor

In the District of Colorado, a district court "may order the clerk to close a civil action administratively subject to reopening for good cause." D. Colo. Civ. R. 41.2. Courts have not viewed the good cause standard to reopen an administratively closed matter as onerous. *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015). See also, *Am. Family Mut. Ins. Co. v. Teamcorp, Inc.*, 835 F.Supp.2d 1083, 1086 (D.Colo.2011) (good cause to reopen a case exists where the parties wish to litigate the remaining issues that have become ripe for review.); see also *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 (10th Cir.2005) (the

2

court contemplated continued litigation after completion of the administrative proceedings); *Frederick v. Hartford Underwriters Ins. Co.,* No. 11-CV-02306-RM-KLM, 2015 WL 1499662, at *1 (D. Colo. Mar. 27, 2015) (good cause exists to reopen the matter where Defendant seeks a determination of the parties' rights and claims).

There is good cause to reopen this matter to supplement the Court's order in order to appoint the NFA to receive restitution payments and, subject to court supervision, distribute them to victims. Without the Court supplementing its Default Order, there will not be a mechanism to provide restitution to the victims of defendants' fraud.

### B. This Court Has the Authority to Appoint the NFA as Monitor

Restitution is an equitable remedy awarded pursuant to the equitable jurisdiction of this Court. [DE #30, Default Order, at 13]. District courts have broad powers to fashion equitable relief. *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and mould each decree to the necessities of the particular case."). The district court's powers to fashion equitable relief are even more expansive when they serve a public interest, as is the case here. *FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 718 (5th Cir. 1982) ("And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."). Indeed, in analogous circumstances involving enforcement of the federal securities laws, the Ninth Circuit observed, "[i]n order to give effect to remedial statutes, the equitable powers of the federal courts are particularly broad, and courts may utilize flexible and novel approaches to implement Congressional intent." *Handler v. SEC,* 610 F.2d 656, 659 (9th Cir. 1979) (appointment of special counsel pursuant to court-supervised

consent decree was "an appropriate exercise of the district court's equitable powers.").

The Court should exercise its broad power to fashion equitable relief, to implement and effectuate the award of restitution contemplated by Congress in the Commodity Exchange Act ("CEA"), 7 U.S.C. §13a-1, and should appoint the NFA as Monitor because such appointment will serve the public interest. First, the victims of defendants' Ponzi scheme will benefit from the service of an experienced and expert Monitor. Indeed, customer protection is one of the core purposes of the CEA *see*: CEA § 3(b); 7 U.S.C. § 5(b) (2018). Additionally, the public interest will be served by saving the Commission from the burden of creating and operating a restitution program that unnecessarily duplicates the longstanding NFA program. Finally, appointing the NFA as Monitor will not prejudice the defendants. Therefore, consistent with the Supreme Court's observation that "equitable remedies are a special blend of what is necessary, what is fair, and what is workable," *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973), the Commission respectfully requests that the Court appoint the NFA as Monitor.

### C. Appointment of the NFA as Monitor in CFTC Cases is a Routine Practice by Courts in this District

In this District, courts have routinely appointed the NFA as a Monitor in CFTC cases. *See, e.g.*, *United States Commodity Futures Trading Commission v. Gale*, 2013 WL 3776315 at *9 (D. Colo. June 25, 2013); *United States Commodity Futures Trading Commission v. Trimble*, 2013 WL 1726364 at *6 (D. Colo. March 14, 2013); *United States Commodity Futures Trading Commission v. Flint McClung Capital LLC*, 2012 WL 639321 at *12 (D. Colo. Feb. 28, 2012). "Appointment of the NFA to serve in such a capacity appears to be a routine practice in cases of this nature." *U.S. Commodity Futures Trading Comm'n v. Gramalegui,* No. 15-CV-02313-REB-GPG, 2018 WL 4610953, at *29 (D. Colo. Sept. 26, 2018). Thus, appointing the NFA as a

Monitor is not only appropriate, it is consistent with the decisions of other courts in this District.

### D. The NFA Is an Expert and Experienced Monitor

Since at least the 1990s, the NFA has served as Monitor in Commission enforcement litigation. Declaration of Daniel A. Driscoll (attached as Ex. 1)**, ¶¶ 4-7. Specifically, as a Monitor appointed by federal district court order in Commission enforcement litigation, or by Commission order in administrative enforcement litigation, the NFA processes and administers any post-judgment restitution and disgorgement payments that respondents, defendants or relief defendants make pursuant to the relevant order. *Id.* The NFA has developed substantial experience and expertise in administering post-judgment restitution and disgorgement programs in connection with the Commission's anti-fraud enforcement litigation. *Id.*, ¶ 6. In particular, the NFA has created and refined a process through which restitution and disgorgement payments are received, accounted for, deposited into a bank account dedicated to that particular matter, and then disbursed to the defrauded customers or as otherwise appropriate pursuant to the relevant order. *Id., ¶ 6.* In the District of Colorado, courts have routinely appointed the NFA as a Monitor in CFTC cases. *Id.,* ¶ 7. In each of these cases, the NFA served as Monitor at no cost to taxpayers, the defrauded customers, the Commission, or the other parties to the action. *Id.*, ¶¶ 3-5.

### E. NFA Is Willing to Serve as Monitor in this Action

Mr. Driscoll, Special Policy Advisor of the NFA, has affirmed that the NFA is willing to serve as Monitor in this matter. *Id.*, ¶¶ 9-10. On behalf of the NFA, Mr. Driscoll has reviewed and agreed to the terms of the Proposed Order. *Id.*, ¶ 9. In sum, the NFA stands ready to serve as Monitor under the terms of the Proposed Order and urged the Court to appoint the NFA as its

Monitor. *Id., ¶* 10.

### F. <u>The Commission Is Unable to Act as Monitor</u>

Without the Court's appointment of a Monitor, no one can act on behalf of the victims by collecting and disbursing restitution payments. The Commission currently does not administer any restitution payments made pursuant to a federal district court order or Commission administrative order. The Commission does not have mechanisms and procedures to receive, account for, safeguard, and disburse restitution payments.

The Court explicitly made no ruling as to the Commission's authority to delegate to the NFA responsibility to administer any restitution payments. However, such a delegation by Commission Order, as a practical matter, would not relieve the Commission of many of the obligations imposed by the Default Order, and it also has the potential to create a separate set of problems. First, the Commission has no authority to command the defendants and to honor its delegation and transmit their restitution payments directly to the NFA. Thus, even with a delegation, the Commission still must be prepared to accept restitution payments from the defendants. It therefore must develop and implement mechanisms and procedures so it is ready to receive, account for, safeguard, and transmit to the NFA for final disbursement any restitution payments that the defendants send to the Commission pursuant to the Default Order. Additionally, if the Court appoints the NFA as Monitor, it foreclosures any potential issues or questions as to whether the Commission's delegation of responsibilities imposed upon it by a federal district court order is permissible or appropriate.

## III.

## CONCLUSION

Accordingly, for the reasons stated above and because good cause exists, the Court should reopen this matter and appoint the NFA as post-judgment Monitor. A proposed Order is submitted herewith.[1]

Respectfully submitted this 7th day of December 2020.

December 7, 2020                                Respectfully submitted:

                                                */s/ Kim G. Bruno*
Kim G. Bruno, Senior Trial Attorney
Michael Solinsky, Chief Trial Attorney
1155 21st Street, NW,
Washington, D.C., 20581
Telephone: (202) 418-5368 (Mr. Bruno) and
202-418-5384 (Mr. Solinsky)
Facsimile: (202) 818-3111
E-mail:  kbruno@cftc.gov,
msolinsky@cftc.gov

Plaintiff
Commodity Futures Trading Commission

---

[1] The Default Order also lacked directions regarding how the defendants may pay the civil monetary penalty. Accordingly, the Proposed Order included such directions so that defendants may be properly credited with any payments they make towards their civil monetary penalty.

EXHIBIT 1

DECLARATION OF DANIEL A. DRISCOLL, NFA

# DECLARATION OF DANIEL A. DRISCOLL
# PURSUANT TO 28 U.S.C. 1746

I, Daniel A. Driscoll, hereby make the following declaration based upon my personal knowledge:

## I. BACKGROUND

1. I am the Special Policy Advisor of the National Futures Association ("NFA"). I have worked in various capacities at the NFA since 1982 including, among other positions, its Chief Operating Officer.

2. In 1974 Congress established the Commodity Futures Trading Commission (the "Commission"), a federal regulatory agency with jurisdiction over futures trading. The same legislation authorized the creation of "registered futures associations," giving the futures industry the opportunity to create a nationwide self-regulatory organization.

3. NFA, a registered futures association with the Commission pursuant to Section 17 of the Commodity Exchange Act, as amended, 7 U.S.C. §21, is the industrywide, independent, self-regulatory organization for the U.S. futures industry. NFA regulates every firm or individual who conducts futures trading business with public customers. NFA develops rules, programs and services that safeguard market integrity, protect investors and help our Members meet their regulatory responsibilities. NFA operates at no cost to the taxpayer and is financed exclusively from membership dues and from assessment fees paid by the users of the futures markets.

## II. NFA's SERVICE AS A MONITOR

4. Pursuant to the Act, the NFA is empowered to make rules for its members as well as to discipline members and their associate persons for violations of the rules by, among other things, expulsion, suspension, fine, censure. The Commission by Order also has delegated to

1

NFA responsibility for administering the registration for Commission registrants and any discipline of such members. Moreover, the NFA from time-to-time assumes duties in support of the Commission, including acting as a Monitor to receive restitution funds from defendants and to distribute such funds to customers in Commission litigations.

5. In addition to the functions discussed above, since at least the 1990s, NFA has served as a post-judgment monitor in Commission enforcement actions. Specifically, as a monitor appointed by federal district court order in Commission enforcement litigation, or by Commission order in administrative enforcement litigation, NFA processes and administers any post-judgment restitution and disgorgement payments that respondents, defendants or relief defendants make pursuant to the relevant order.

6. NFA has developed substantial experience and expertise in administering post-judgment restitution and disgorgement programs in connection with the Commission's anti-fraud enforcement litigation. In particular, NFA has created and refined a process through which restitution and disgorgement payments are received, accounted for, deposited into a bank account dedicated to that particular matter, and then disbursed to the defrauded customers or as otherwise appropriate pursuant to the relevant federal district court order or Commission administrative order.

7. In the District of Colorado, courts have routinely appointed the NFA as a Monitor in CFTC cases. *See, e.g., United States Commodity Futures Trading Commission v. Gale*, 2013 WL 3776315 at *9 (D. Colo. June 25, 2013); *United States Commodity Futures Trading Commission v. Trimble*, 2013 WL 1726364 at *6 (D. Colo. March 14, 2013); *United States Commodity Futures Trading Commission v. Flint McClung Capital LLC*, 2012 WL 639321 at *12 (D. Colo. Feb. 28, 2012).

### III. THE NFA IS WILLING TO ACT AS A MONITOR IN THIS ACTION

8. I was consulted by counsel for the Commission as to whether NFA would agree to act as Monitor in *CFTC v. Venture Capital Investments Ltd., Breonna Clark, et al.*, Case No. 1:20cv0382 MEH. As is our practice, NFA agreed to act as a Monitor and agreed to the relevant Monitor provisions of the proposed order.

9. I hereby reaffirm NFA's continued willingness to serve as Monitor in this matter should the Court so order. I have reviewed and agreed to the terms of the Proposed Order that I understand will be transmitted to the Court along with this Declaration. NFA stands ready to serve as post-judgment Monitor under the terms of the Proposed Order.

10. Accordingly, I urge the Court to grant the relief requested in the Commission's *Plaintiff's Motion and Memorandum of Points and Authorities To Reopen and To Supplement The Court's Final Judgment* and appoint NFA as Monitor in this action.

11. I hereby declare under penalty of perjury that the foregoing is true and correct. Signed this day of Nov 25, in Chicago, Illinois

*Daniel A. Driscoll*
Daniel A. Driscoll